DAVID P. HALL *v.* WILLIAM B. LAWRENCE.

Two tenants in common, making partition of the land owned between them, the one granted to the other " free liberty of carrying away gravel and sea weed off the beach belonging to his part of said farm, and also stones below high water mark, and liberty to tip the sea weed on the bank of his part of said farm :" Held, that this grant created a right of common appurtenant to the land of the grantee, and that said right was not unlimited but a right in common with the grantor and restricted in extent to so much sea weed and stone, as the grantee might have occasion to use, on the land set off to him, and that a right of way to and from the shore, passed as incident to the common granted, and that said right of way, as well as the right of common, would pass upon a conveyance of the land to which they were attached under the general term appurtenances.

Held also, that upon the severance of the dominant estate, by a conveyance of different portions thereof to several persons, said right of common was apportionable among the several grantees, the rule being that wherever common is admeasurable it is apportionable.

The dominant estate consisted of forty-nine and three quarters acres, whereof the owner conveyed to the owner of the servient thirty acres, and, subsequently, conveyed the remaining nineteen and three quarters acres to one, who, afterwards, repurchased the thirty acres of the dominant estate, which had been conveyed to the servient owner, and conveyed the whole to the plaintiff ; and the plaintiff sold and conveyed away, nine and three quarters acres, a portion of the nineteen and three quarters acres, which had not been united to the servient estate, and in said conveyance the plaintiff reserved to himself the right of common of sea weed and stone appurtenant to said nine and three quarters acres ; held, that the union of the servient with thirty acres of the dominant estate did not extinguish the entire right of common, but only so much as was apportionable to thirty acres, and that the residue of the common continued appurtenant to the nineteen and three quarters acres ; but that inasmuch as said common could not be severed from the estate to which it was appurtenant and granted over, so neither could it be retained after a conveyance of the estate, and that the plaintiff's reservation of the common appurtenant to the nine and three quarters acres, conveyed away by

him, was of no effect, and the only common, which remained, was the common apportionable to the ten acres, part of the nineteen and three quarters, which were never united with the servient estate.

In Equity. The Bill prayed an injunction to restrain the defendant from obstructing or hindering the plaintiff or his tenant, or the servants or agents of such tenant, in passing and repassing over a certain path or drift way to the shore or beach, and procuring sand, gravel and sea weed from said shore or beach upon or adjoining the defendant's farm, and stones (below high water mark) thereon, and tipping sea weed on the bank of said defendant's farm, as they had the right and had been accustomed to do. The bill further prayed an account of sea weed taken by the defendant from said shore, and for damages for obstructions to the use of the way aforesaid.

The plaintiff claimed the right of way, (which was a way passing over the defendant's land,) and the privileges of the shore, by virtue of a certain indenture of partition and various conveyances, and by virtue of an uninterrupted user for more than twenty years. The cause coming on for hearing, it was agreed that the Court, without considering the question of user, should first determine the rights of the parties under said indenture of partition, and the conveyances by which they respectively claimed title to said lands.

Said indenture of partition, dated Nov. 7, 1776, recites that Nicholas Taylor and Joseph Wanton Taylor are sons of Robert Taylor, deceased, and his devisees in common of a certain farm in Newport, containing one hundred and thirteen acres, of which farm they, by said indenture, make partition by metes and bounds, assigning the south part of said farm, containing fifty nine acres and three quarters of an acre to said Nicholas, and the North part,

containing forty nine acres and three quarters of an acre, to the said Joseph W. The indenture then proceeds: "And the said Joseph Wanton Taylor, doth also covenant, promise and agree, that the said Nicholas Taylor, his heirs and assigns, shall have a drift-way through the meadow-land of him the said Joseph Wanton Taylor, where the path or drift-way now is, and the said Nicholas Taylor and the said Joseph Wanton Taylor do hereby agree that they, their heirs and assigns, shall and will at all times forever hereafter be at equal charge and expense, in maintaining and keeping in good order the gates and lanes that are adjoining on said drift-way, and the said Nicholas Taylor doth grant free liberty of carrying away gravel and sea weed off the beach belonging to his part of said farm, and also stones below high water mark on said beach, to the said Joseph Wanton Taylor, his heirs and assigns, as also the liberty to tip the sea weed on the bank on his part of said land."

By a deed dated March 12th, 1803, Joseph W. Taylor conveyed to Nicholas Taylor in fee, from the south side of the tract of land assigned to him, a tract of land containing thirty acres, describing the same, "together with all and singular the ways, waters, fences, improvements, rights, profits, privileges and appurtenances to the same belonging or in any way appertaining, with the reversions thereof, and all the estate, right, title, claim and demand whatever of me, the said Joseph W. Taylor, of, in and to the sa   "

By deed, dated August 4th, 1812, the said Joseph W. conveyed all the residue of the land assigned to him by said indenture of partition to George Armstrong, together with all rights and privileges, &c. "And all the privileges and appurtenances which I, the grantor, now have, of

taking and carrying away gravel and sea weed off the beach belonging to Nicholas Taylor, and all stones below high water mark on said beach, and also to tip the sea weed on the bank of the said Nicholas Taylor's land."

By deed dated July 31st, 1813, Nicholas Taylor mortgaged to the President, Directors and Company of the Bank of Rhode Island, the tract of land of thirty acres, which he had purchased in March, 1803, of Joseph W. Taylor, describing the same by metes and bounds, and as "the same estate which I purchased of my brother, the said Joseph W. Taylor—To HAVE AND TO HOLD the said granted and bargained premises with all the appurtenances, privileges and commodities to the same belonging, &c." And March 19th, 1819, the mortgagees were let into possession of the premises under their mortgage, as provided by the statute, and held the same down to 1822. On January 4th, 1822, the said mortgagees transferred to the said George Armstrong, their mortgage deed, and all their right, title, &c., which they had in and to the lands therein described and thereby pledged and mortgaged, subject to the equity of redemption therein of said Nicholas and the right of dower of his wife.

By deed dated July 4th, 1835, the said George Armstrong conveyed to the plaintiff, David P. Hall, the above named lot of land of thirty acres, and the lot of land of nineteen and three quarters acres, which he purchased of Joseph W. Taylor, being the whole of the land of forty nine and three quarters acres, assigned to the said Joseph W. under the indenture of partition between him and said Nicholas—"To have and to hold the said granted premises with all the appurtenances, privileges and commodities to the same belonging or in any way appertaining."

The defendant deduced his title as follows :

By deed dated September 5th, 1808, the said Nicholas Taylor mortgaged to Elisha Coggeshall the said fifty nine and three quarters acres, set off to him by the aforesaid indenture of partition, and on March 7th, 1818, the executor of said Elisha took possession of said premises, by virtue of a writ of possession, and, February 12th, 1835, the administrator *de bonis non* of the estate of said Elisha, conveyed to the aforesaid George Armstrong, and to one John Wilbour, all the right, title and interest of said Elisha in the aforesaid premises, and assigned to them the mortgage thereof, and the judgment of Court rendered for possession of said premises.

By deed dated January 7th, 1836, the said George Armstrong granted, released and quit claimed all his right, title and interest in and to the said Nicholas Taylor farm to the said John Wilbour.

By deed dated September 5th, 1836, the said John Wilbour (his wife relinquishing dower) conveyed to the defendant, William Beach Lawrence, the whole of the said Nicholas Taylor farm in fee. And the deed contained the following reservation : "Also saving and excepting a right which the proprietor of the adjoining farm has to take, carry away and tip sea weed, and to carry away stones from below high water mark from the south shore of said farm, and any claim which George Armstrong may have personally, by virtue of an agreement heretofore entered into between myself and said Armstrong and said Armstrong's subsequent deed to, use of one half of the aforedescribed premises."

The agreement above referred to, was an agreement dated February 17th, 1835, between said Wilbour and Armstrong, by which said Armstrong agreed, that he

would not, within six years, sell his undivided half of the Nicholas Taylor farm to any one except said Wilbour, and that Wilbour should at any time within six years have the right to purchase the same, upon paying the sum which said Armstrong paid for the same, and it was agreed, "if said Wilbour shall purchase as aforesaid, the said Armstrong, his heirs and assigns forever shall have an equal privilege to get sea weed on the east and south shores of said farm—that is, the said Armstrong, his heirs and assigns, to get the sea weed one week at the east shore, and in that week the said Wilbour, his heirs and assigns to get sea weed at the south shore," and the next week *vice versa*, and so alternately, "the said Armstrong, his heirs and assigns, to have the privilege of tipping up sea weed on the bank of the east shore, the said Wilbour, his heirs and assigns, to forever have a right of way for carting, &c. from said farm as follows : to keep the drift way towards said Armstrong's house, until it comes into the way leading into town. It is also agreed, that said Armstrong, his heirs and assigns, when getting sea weed, is to keep the way or path westerly to meet the old path generally used from the east shore."

It further appeared, that the plaintiff, on the 14th of October, 1843, conveyed the said Joseph W. Taylor farm to one Thomas R. Martin, who, on the 27th of October 1847, reconveyed the same to the plaintiff; and that on the 18th of September, 1850, the plaintiff conveyed to Robert H. Ives about nine and a quarter acres of said farm, being part of the nineteen and three-quarters acres retained by Joseph W. Taylor when he made the conveyance of March 12, 1803, to Nicholas, but by said deed expressly reserved the said privileges of sand, gravel and sea weed

upon the south shore of the said Taylor farm, and of tip-
ping the sea weed on the bank thereof, as appurtenant to
the residue of the said Joseph W. Taylor farm, retained
by the plaintiff.

*Carpenter* and *Turner* for the plaintiff contended ;

1st. That the right to take sea weed, gravel and stone
from the shore of the Nicholas Taylor farm by the owner
of the Joseph W. Taylor farm, was not extinguished by
the purchase of the Nicholas Taylor farm, by Armstrong
and Wilbour, on the 12th of February, 1835. Admitting,
as the general principle of law, that unity of possession of
the estate to which an easement is attached, and of the
estate which the easement encumbers, is in effect an ex-
tinguishment of the easement, they contended that the
principle was limited to an absolute unity of possession
and ownership of both farms, and that the absolute own-
ership of one farm and a mere tenancy in common with
another person in the other farm, would not work an ex-
tinguishment. *Angell on Watercourses*, $191, et seq
and note p. 200. *Greenleaf's Cruise*, vol 3, t. p. 56 s. p.
571. Ibid s. p. 471, t. p. 560, § 22. *Code of Louisiana*,
Art. 101. *Bliss* v. *Rice*, 17 Pick. 23. That in equity
the rule was controlled with regard to estates acquired
by the act of a party, by the intent of a party as collected
either from the deed or from the circumstances of the
transaction, or where no intention is manifest by the ap-
parent interest of the party. *Greenleaf's Cruise*, vol. 1,
tit. 8, ch. 2, n. 1, t. p. 260, s. p. 239 and the cases there
cited. *Jones* v. *Mowry*, 2 Cowen, 246. That it was
both his interest to preserve the easement and his inten-
tion, evidenced by his agreement with Wilbour, of Feb-
ruary 17, 1835, and by the subsequent deeds and acts of

the parties interested. That, therefore, unless the easement was extinguished anterior to Armstrong, it passed by his deed to the plaintiff, under the general grant of appurtenances.

2d. That there was no extinguishment of the easement appurtenant to the Joseph W. Taylor farm, by the grant of 30 acres thereof, March 12, 1803, to Nicholas Taylor; this making Nicholas, at best, but a mere tenant in common of the easement with Joseph, and a tenancy in common of an easement in one moiety of a farm, will not merge in the fee of the other moiety of a farm; and if it had not been a tenancy in common, still the evident intent of the grantor was to reserve the privileges, as was manifested by his not mentioning them in the deed of the thirty acres, while he did mention them in the deed of the nineteen and three quarters acres, and also by the user of the privileges after the grant precisely as before; that being but a tenancy in common, when Nicholas Taylor mortgaged the thirty acres to the Bank of Rhode Island, the tenancy in common in the easement went with the mortgage, and when, upon the foreclosure of the mortgage, the Bank conveyed the same to Armstrong, the easement passed by their deed and thus he became sole owner of the whole easement, originally appurtenant to the forty nine and three quarters acres, and then the whole easement passed under his deed to the plaintiff.

3d. That the privileges claimed need not be restricted to the land, to which they are appurtenant, but may be disposed of or leased to other persons, so long as the party selling or leasing continues the owner of the land to which the privileges are appurtenant. *Hills* v. *Miller*, (3 Paige, 257.) *Phillips* v. *Rhodes*, (7 Aut. 322.)

*Ames* for respondent contended :

A motion for preliminary injunction, being addressed to the discretion of the Court, will not be granted, unless the granting of it be necessary to the protection of some in-terest or right of the plaintiff, which may be injured, im-paired, or endangered by the proceedings of the defendant before the cause can be brought to a final hearing. (Barbour's Chan. Pract. 608–9. Gale & Whately on Easements, 313.) *Livingston* v. *Livingston*, (6 Johns. Ch. Rep. 498.)

Such an injunction is never granted while the right is doubtful, or the danger contingent or remote. (Barbour's Ch. Pract. 609, 618. 3 Daniel Ch. Pract. 1853, n. 2.)

The purpose of such a motion being conservative, the Court, in a case of a fair claim of right on the part of the defendant, though inclined against him, will refuse to in-terfere, if the injury of the interference to the defendant, in case it should turn out that he was right, exceeds greatly the benefit of the interference to the plaintiff, if it should turn out that he was right. (2 Mylue & Craig, 570. 1 Paige, 97. 2 Paige, 213.)

The Court will perceive at a glance, that, looking at the *documentary* proof in the cause, the right, as claimed, is at least doubtful ; that its exercise, which we have hindered, is destructive to our estate; and that, on the other hand, the injury sustained by the defendant, if the Court should finally decide in his favor, is perfectly sus-ceptible of compensation in damages, and his claim for them is against a person of undoubted solvency.

So far as the plaintiff puts his cause upon the proof of *user*, it is obvious that he has no ground for a prelimina-ry injunction, the investigation of a right so based being properly had only upon full proofs.

This is therefore no case for a preliminary injunction, but as the plaintiff has fully argued his claim, we shall undertake to show that our interference with its exercise was not only justified, but imperatively required by a common attention to our rights and interests.

The right claimed by the plaintiff and attempted to be exercised, is to take sand, gravel, sea-weed, sea-manure and stones from the shores of our farm, not only for use on the farm of the plaintiff, but for sale as merchandize in the market, to an extent limited only by the growing demand in Newport for building and gardening uses. This right at least we deny, and have hindered in the exercise ; and if the Court are satisfied that the plaintiff has attempted to exercise a control over our estate in excess·of his right, as this would be a good ground for injunction on our part against the plaintiff, so it would certainly justify our peaceable attempt to prevent so gross an invasion of our rights. (2 Story, Eq. Jurisp. sec. 929.)

Though somewhat general language is used in the deed of partition between Joseph and Nicholas Taylor, in reserving the right to take sea-weed, &c., yet this, because in derogation of the rights of the owner of the land, is to be fairly and reasonably, considering the purpose of the deed, if not strictly, construed. (Gale & Whately on Easements, p. 275. sec. 375.)

It is a grant or reservation of a right or service appurtenant to one piece of land to be exercised over another, the former being the dominant and the latter the servient estate, intended to enable the one to participate in the natural advantages of the other for *its* benefit exclusively, the two pieces of land being sufficiently near each other for that purpose. (Ibid, 5, 6, 7. 237. 1 Domat's Civil Law, sec. 1020. Angell on Water Courses, 148. n. 2.)

The land serves the land ; and the very necessity, which
32 .

is upon the plaintiff to claim this right as appurtenant to his estate, limits the right in its exercise to the uses of the estate.

It is like common of pasture appurtenant, which is limited to the cattle of the dominant estate ; or common of estovers appurtenant, which must be spent upon the dominant estate. (2 Blackst. Com. 34, (side page,) 25 (top page,) n. 23. 26 (top page,) n. 26. 27 (top page,) n. 27. Co. Lit. 121. b. 164. b. notes to sect. 184. 5 Petersdorf's Abr. 610.)

That the right is thus appurtenant and therefore limited, must be conceded by the plaintiff ; because, if the original right reserved was a right in gross, the intermediate conveyances to the plaintiff show no title to the right, since the general word " *appurtenance*s" in these deeds is the only phrase in them under which he can claim the right.

The right being then appurtenant we contend—

1st. That when in case of profits *a prendre* the owner of the dominant estate becomes the owner of any portion of the servient, or, when the owner of the servient estate becomes the owner of any portion of the dominant estate, so that in either case the title of one or any portion of one estate becomes united in the same person who has the whole or any portion of the other, the title to the profit becomes extinguished, not on the ground of mere unity of title as in case of easements—but,

1st. On the ground of the policy, that being the owner of or interested in both, he is tempted in case of common of pasture for the sake of the servient estate to exercise his right of common as owner of the dominant in that portion of the servient estate in which he is not interested, rather than in that in which he is interested, and in case of such a profit as in the case at bar, and

which amounts to the same thing, to take and spread all the profits on that portion of the dominant estate which he owns, leaving nothing for that portion which he does not own, and thus to do injustice and produce inequality, to prevent which the common law extinguishes the right. Tyringham's case, (4 Coke, R. 37.) *Livingston* v. *Ten Broeck*. (16 Johns. R. 14, 26, and cases there cited.) *Van Rensselaer* v. *Radcliff*, (10 Wend, 629. 3 Kent's Com. 407–8. Woolrych on Commons, 141.)

2d. On the ground that a right to such a profit is not apportionable, but entire and indivisible, and at the same time, being appurtenant to land, and the owner entitled to it merely as the owner of the land, it cannot be supported when divided or severed from the land.

Hence, if the Court decree, that by Joseph W. Taylor's deed to Nicholas Taylor in 1803, of thirty acres of the dominant estate, the right to the profit was intended to or did pass, in part, as appurtenant to the thirty acres, then *the whole* must have passed or have been abandoned, since the right cannot be apportioned between the thirty acres sold and the nineteen and three-quarters acres retained by Joseph.

But if the Court should come to the conclusion that the right, or any portion of it, was not intended to and did not pass by that deed, inasmuch as the thirty acres did pass by it, the right, so far as appurtenant to the thirty acres, must have been retained by Joseph, dissevered from the thirty acres; and, as an appurtenant right cannot be supported dissevered from the land to which it is appurtenant, it is so far lost; and as, again, it cannot be apportioned to the nineteen and three-quarters retained, it must be wholly lost.

That it cannot be apportioned. *Van Rensselaer* v. *Radcliff*, (10 Wend, 639, and cases cited. 3 Kent, 408,

Co. Lit. 165.) *Livingston* v. *Ketchum*, (1 Barb. Sup. Ct. R. 16 Johns. R. 30.)

That it cannot be supported when dissevered from the appurtenant estate. *Phillips* v. *Rhodes*, (7 Metcalf, R. 324.) *Van Rensselaer* v. *Radcliff*, (10 Wend, 639.) *Livingston* v. *Ketchum,* (1 Barb. Sup. Ct. R. 197, per Story Jus.)

Upon this last ground, the plaintiff's deed to Robert H. Ives of the nine acres, in which he expressly reserves the privilege, extinguishes it, since he could not retain it dissevered ; and it cannot be apportioned between what he lost by the sale of the nine acres and the ten acres he retained.

This last ground of extinguishment proceeds upon the idea that such a right, upon sale of any portion of the dominant estate, cannot be apportioned.

But again, suppose the Court should decree that it can be apportioned, and is not the entire and indivisible thing we hold it to be, then there is no reason whatsoever why so much of it as was appurtenant to the thirty acres should not have passed to Nicholas by force of the words "appurtenances, privileges," &c., in Joseph's deed, in which case it would be *pro tanto* abandoned to Nicholas, who could not hold *a privilege* in one of his estates appurtenant to another of his estates, since he owns the fee in both ; and if, though apportionable, it cannot be supported dissevered from the estate to which it was made appurtenant, then that portion of the right which pertained to the nine acres sold to Ives, and which the plaintiff, by his deed to Ives, expressly retained or reserved, was lost, leaving the plaintiff only that portion of the right which is apportionable to the ten acres he retains.

The right of the plaintiff was therefore wholly extinguished, or existed at the most only for the benefit and

use of the ten acres retained by him ; and the Court will at once see how gross was the attempt to sell our farm and its profits by the load to any and all who might choose to purchase, and how little claim the plaintiff has to the interference of a court of equity to beat down our resistance to so bare-faced an invasion of our rights.

The agreement of Armstrong and Wilbur, subsequent to the deed of partition and sale of the thirty acres by Joseph to Nicholas Taylor, was a *new* agreement, confined merely to sea-weed, and seems to have been made upon the idea that all former right had been merged or extinguished. It did not create a right appurtenant, but a right in gross, and was so treated by the parties to it ; and, if so, has not passed to the plaintiff. *Grant* v. *Chace*, (17 Mass. 443.)

Armstrong evidently supposed that he had not parted with his right to the plaintiff, for he subsequently releases it, so far as the east shore is concerned, to the defendant, by his deed of October 1, 1836.

Besides, whatever was the nature of the right created by this agreement, it is evident that the plaintiff can have no benefit from it. The plaintiff's deed from Armstrong is dated July 4, 1835. Now, though the agreement is dated February 17, 1835, yet Armstrong's right under the agreement was not to accrue by its terms until he conveyed to Wilbur, and that conveyance was not executed until January 7, 1836, long after his sale to the plaintiff.

The so called recognition of this right in the deed of Wilbur and wife to the defendant, in 1836, so much insisted on by the plaintiff, cannot avail him in support of his right, since he is no party or privy to the deed, and can claim no benefit from it. It cannot be fairly construed even as an admission of the right by the plaintiff in taking the deed or by Wilbur in using such language

in it, but is, at most, a cautionary exception from warranty. *Jackson* v. *Smart*, (20 Johns. Rep. 87.)  *Hornbeck* v. *Westbrook*, (9 Johns. Rep. 73.)  *Hornbeck* v. *Sleght.*, (12 Johns. Rep. 200.)  *Sparrow* v. *Kingsman*, (1 Comstock Rep. 245.  1 Greenleaf's Ev. Sect. 204.)

Besides, the defendant's title does not rest upon this deed of 1836, but upon the earlier mortgage outstanding and assigned to the defendant in 1850; and it will be noticed that this deed recognizes no rights of this sort in anybody, even by implication.

BRAYTON, J., delivered the opinion of the Court.

The plaintiff claims in this case a right to enter upon the land of the defendant, being the farm set off to Nicholas Taylor in the deed of partition of 1776, and to take and carry away from the shore thereof, mentioned in the deed of partition, sea-weed, gravel and stone in any quantity without limit at his will and pleasure and to make merchandize thereof for his profit, and a right of way to pass and repass to and from said shore over the defendant's land for that purpose.

This right he claims as a right in gross, though, by the deed of partition, he claims that it was originally made appurtenant to the North farm set off in said deed to Joseph W. Taylor, under whom he claims.

The argument both for the plaintiff and defendant, proceeds upon the assumption that the right of taking seaweed, gravel and stone, whatever it was, was originally appurtenant to the estate of Joseph W. Taylor, and, indeed, if it were not appurtenant, it is evident the plaintiff has no title, for his deed from Armstrong describes no such right, and unless it was appurtenant at the time, he takes nothing by his deed.

In order to ascertain what the rights of the plaintiff now are, it is necessary to inquire, first, what were the rights originally granted in said deed to Joseph W. Taylor.

By the terms of the deed, after setting off to Nicholas the south part of the original farm, upon which portion was all the beach and setting off to Joseph the north part, which was less in quantity and we may presume without a beach privilege less in value, the deed then proceeds and says: " And the said Nicholas Taylor, doth grant free liberty of carrying away gravel and sea-weed off the beach, belonging to his part of said farm, and, also, stones below high-water mark on said beach, to the said Joseph W. Taylor, his heirs and assigns, and, also, liberty to tip the sea-weed on the bank on his part of said land."

This grant is made doubtless to equalize the partition, to render the north part, which had no shore where sand and sea-weed might be obtained for improving and ferti-lizing the land, and it may be less facilities for obtaining stone for building and fencing, equal in value with the south part.

It will be seen also, that the grant is not limited in terms as to quantity, nor is it defined in terms to what uses it shall be applied or for what purposes taken, so as to furnish a just measure of the amount which Joseph might take.

We must however presume that it is not to be entirely without limit, extending to the entire quantity of gravel, sea-weed or stone upon the shore and thereby excluding Nicholas; but that the right of Joseph, was to be a right in common with Nicholas. So it must have been the in-tent of the parties, that, as the right was created for the benefit of the north shore, and as it must have some limit as to the amount, it should be limited in extent to the uses of the land set off to Joseph, and so it must neces-sarily become appurtenant; Joseph would not, however,

Hall v. Lawrence.

be confined to so much only as might be necessary of necessity to the estate, but as the grant was liberal—" free liberty"—might take so much as he might have occasion to use for any purpose upon the estate.

The plaintiff's counsel contends that under this grant, upon a just construction of it, Joseph originally had a right to take for sale and profit, without regard to any use, and the case of *Phillips* v. *Rhodes* (7 Met. 322) is cited to that point, in which it is held, that under a right of common to take sea-weed appurtenant to the estate and intended for a dressing for the land, it might when taken be applied to that use or sold. No reason is given nor authority cited, and we are left upon the authority of the case alone. It is not easy to perceive the reason, if the extent of the right were to be measured by the use and purposes of the estate. But without determining whether when once taken for use, the party might not forego the benefit of it to his estate and sell to another, the conclusion we think is warranted that the sale would not give him a right to take more than reasonably he might have taken had he thought fit to use it upon the estate.

The effect of the grant in the deed of partition is to create a right of common for seaweed, gravel and stone, in favor of the north farm set off to Joseph, and as appurtenant thereto, to be exercised on the shore of the estate set off to Nicholas, giving a right to take so much as the owner of the north shore might think proper or profitable to use on the estate.

There passed also, as incident to this grant, a right of passing and repassing to and from the shore over the land of Nicholas, in some convenient place for the purpose of taking the profit. This was necessary to the enjoyment of the right of common granted, and would therefore pass by an implied grant, and accompany and follow the prin-

cipal grant so long as it existed, and only become extinguished with the extinction of the common itself.

So also a grant of land, over which the grantor has a way of necessity to him for the enjoyment of another estate, does not extinguish the way, but the way is by implication reserved.

This right of way incident to the right of common falls under the head of secondary easements, and the objection raised that it was not appurtenant to the north farm and would not pass under the term appurtenance is not tenable.

Did these rights pass to the plaintiff? George Armstrong, by his deed of July 4th, 1835, conveyed to the plaintiff all the land originally set off to Joseph W. Taylor, in the deed of partition of 1776, with the appurtenances, and whatever rights of common were then appurtenant to the lands conveyed or to any portion of them passed to the plaintiff. Our inquiry then must be directed to the title which Armstrong had to the common.

Armstrong's title to the land is derived to him by two separate conveyances. By the deed from Joseph W. Taylor, of August 12, 1815, he acquired title to nineteen and three quarters acres, a portion of the land originally set off to Joseph, " and all the privileges and appurtenances which I, the grantor, now have of taking 'and carrying away gravel and seaweed and all stones below high water mark on said beach, and also to tip the seaweed on the beach of the said Nicholas Taylor's land." Such are the words of the grant.

But whether any right of common then remained appurtenant to the nineteen and three quarters acres, must depend upon the effect which is to be given to the conveyance of Joseph W. Taylor to his brother Nicholas, of March 12, 1803. By that deed Joseph conveyed to Ni-

cholas thirty acres, part of the share set off to him, to which the whole right of common was made appurtenant.

The defendant's counsel claims that the effect of the conveyance of the thirty acres portion of the dominant estate is the extinguishment of the whole common.

The first question here raised is whether this right of common was divisible and might or not be apportioned to the several parts of the dominant estate upon a severance of the estate. In regard to rights of common which by law are indivisible, a conveyance of any portion of the dominant estate will extinguish the whole, as in the case of common of estovers, *Vanrensslaer* v. *Radcliff*, (10 Wend. 639) *Livingston* v. *Ketchum*, (1 Barb. S. C. R. 592,) and the reason assigned is that the service is entire and appurtenant to an entire estate, and not being divisible it cannot be appurtenant to part of the estate as an entire service.

There are, however, other rights of common which are in law divisible, and in all such cases it may be apportioned to the several parts of the dominant estate upon its severance by different conveyances. A right of pasture for cattle *sans nombre* is of this kind. In such case it is held that though the right be unlimited in terms, yet it is intended for the use of the estate and limited to such cattle as may be kept upon the dominant estate or upon any portion of it, and equally upon any portion, so that, upon a division of the dominant estate and upon apportionment of the service to the several parts, the servient estate is not charged to any greater extent than before or with more cattle. And the rule is that wherever the common is admeasurable the common is apportionable. Tyrringham's case (4 Co. 35) But the right being measured by the uses of the estate cannot be severed from the estate. and granted over. *Drury* v. *Kent*, (Cro. J. 15)

The right in the present case is of the same nature. It is intended for the use of the estate and for every acre of it and that equally, and whether the right be divided or not, the measure is the same. It may therefore be divided, and, by a conveyance of a part of the dominant estate, it would be apportioned to the part conveyed and so much might well pass with it under the term appurtenance.

This conveyance may be affected by another rule, for though the common may be in its nature divisible and apportionable, yet, if the effect of the conveyance is to surcharge the servient estate, it shall not only not be apportioned, but shall become extinct for the whole.

And for the same reason it is, that a release of a portion of the servient estate or purchase of part of the servient by the sole owner of the dominant shall extinguish. In *Rotherham* v. *Green*, (Cro. E. 593,) there was a release of part of the land in which, &c. In *Kimpton* v. *Bellamyes*, (Leonard 43,) the owner of the dominant purchased two acres of forty of the servient estate. In these cases the effect was to surcharge the residue. So, in Tyrringham's case, (4 Co. 35.)

In Wild's case, (8 Co. 156,) there was a conveyance of five acres of the forty contained in the dominant, and on the same reasoning it was held that the servient estate was no more chargeable upon the severance of the dominant estate than before, for that the five acres were entitled to common for the cattle levant and couchant thereon as before, and for no more.

And the rule deducible from all the cases is, as before stated, that if the effect of the conveyance is to surcharge the common and burthen to a greater extent the servient estate, it shall extinguish; if otherwise, there shall be an apportionment and such portion will pass as appurtenant.

By this rule the portion of common belonging to the thirty acres would become severed from the residue, which would remain appurtenant to the nineteen and three-quarters acres retained by Joseph Taylor, and the thirty acres would become a distinct dominant estate.

But inasmuch as the title to the dominant estate, by virtue of the conveyance, became united in the hands of Nicholas with the servient estate, all the common appurtenant to the thirty acres thereby became extinguished by unity of title. It has not been revived by any of the conveyances so as to pass by the term appurtenance in the deed of Armstrong to the plaintiff.

The defendant's counsel claims that, although such would be the effect of the deed to a stranger, who immediately conveys to the servient owner, yet, if made directly to the servient owner, the whole is extinguished.

Now, bearing in mind the reasoning on the cases generally upon the subject and the rules deducible from them, we should not expect to find a case in which it should be held that, where the conveyance does not directly surcharge the common remaining and where the servient owner can in nowise suffer injury, the whole common should become extinguished and that against the apparent intent of the parties, but that effect would be given in such case to the clear intent.

There is however, in Tyrringham's case, the annunciation of such a rule as the defendant's counsel claims. It is this :—that common appurtenant cannot be extinct in part and in esse for part by act of the parties, for that common appurtenant was against common right. Taken in the broad sense which counsel gives it and independent of the connexion in which it is used, it might support the ground which the counsel assumes. But taken with its connexion, it is evident that it was not applied or in-

tended to apply to such a case as is now before us. The same rule exists in relation to rent charge, which is said to be against common right as distinguished from rent-service which is deemed of common right.

The only American case, cited upon this point, is that of *Livingston* v. *Ten Broeck*, (16 Johns. 14,) and as this is claimed to conclude this point, it will be necessary to examine it with a little particularity.

The statement of the case shows that a certain estate, called the Vosburg farm, was entitled to common in a large pasture within the manor of Livingston, and that Henry Livingston was sole owner of fifty acres of land, parcel of the tract in which common was to be taken, but, as it did not appear whether or not the conveyance to Henry Livingston comprehended a portion of the Vosburg farm, a new trial was necessary, and Mr. Justice Spencer, who delivered the opinion thereupon, says, he does not see how the question can now be raised ; but, in view of a new trial, it is proper that the Court should express an opinion and he proceeds to give it. He then deduces the general rule and says the governing principle is that injustice shall not be done to the servient estate, and, if it shall be found that Henry Livingston purchased part of the Vosburg farm, (which was the dominant estate, he being owner of a *portion only* of the servient,) the whole common should be extinguished, because he is then interested in discharging his own land and surcharging the residue.

There is nothing in the case or in the opinion delivered, which indicates any intention in the Court to go beyond the case of Tyrringham. The whole opinion is based upon that case, which, as Justice Spencer remarks, was affirmed for good law in Wild's case and had never been overruled.

Now Tyrringham's case when carefully examined, it will be seen, does not come up to the point made by the defendant's counsel. That was a case involving the same principles as that of *Livingston* v. *Ten Broeck*. It was this : Boniface Pickering was the owner of forty acres, part of a tract of seventy acres, which constituted the servient estate, (the residue, thirty acres, being owned by one John Pickering.) He purchased the whole of the dominant estate. It was resolved " that when part of the land to which, &c., is aliened, then every of them may prescribe to have common for cattle levant and couchant upon the land, and in none of these cases any prejudice accrues to the tenant of the land in which, &c., for he shall not be charged with more upon the matter than before the severance and God forbid," (say the Court,) " the law should not be so, when part of the land to which, &c., is aliened, for otherwise, many commons in England would be extinguished and lost." And it was agreed that such common as is admeasurable shall remain after severance of part of the land to which, &c. But inasmuch as the Court resolved that the common was appurtenant, and not appendant, and so against common right, it was adjudged that by the said purchase the common was extinct ; (and the reason) " for in such case common appurtenant cannot be extinct in part and in esse for part by act of the parties." Now, the case was ;— the owner of part of the servient became owner of the whole dominant and so interested in surcharging the residue of the servient.

But, in order fully to understand the case and the point immediately before the Court, it must be borne in mind that so far as the severance and apportionment of the common to the dominant estate is concerned, there is no difference in the rule of law applicable to common appur-

tenant or common appendant.   In either case, upon seve-
rance of the dominant estate the common was apportion-
able.   The difference between the  two related to the ser-
vient estate, and the Court in a preceding part of the case
had  resolved that  common appendant being of common
right, might not only be apportioned to the land to which,
&c.,  but  would also be apportioned upon the severance
of the estate in which,  &c., and they say,  that as to this
kind of common, if the  commoner aliene part the land in
which,  &c., yet the common shall be  apportioned.   But
it was not  so with  common appurtenant.   In  such case
there could  be  no  apportionment  to the  servient  estate.
And, therefore, the Court  were obliged to say,  referring
particularly to  the  part of  the case before them, that  by
this purchase the common was extinct for  the whole, for
in such case common appurtenant could not be extinct in
part and in esse for part by act of  the parties.

There never  was  any difficulty in releasing  a  portion
of the service charged upon the servient estate.   The only
difficulty was in releasing any portion of the servient estate
wholly from all service, and that, because it could not  be
apportioned.

The points, resolved in Tyrringham's case, might then
well be affirmed for good law as they were in Wild's case,
where it is  said ;  " it  was  well agreed that common ap-
pendant  was of  common  right severable, and although
the commoner in such case purchase parcel of the land in
which, &c., yet the common shall be apportioned, but in
such case  common appurtenant and  not appendant  by
purchase of parcel of the  land  in  which,  &c., is extinct;
for the causes and reasons given in  Tyrringham's case,"
and as a further reason,  " It was folly for the commoner
to intermeddle with part of the land in which, &c., which
belonged not to him, but when he intermeddled but only

with his own land by alienation thereof, it shall not turn to his prejudice, for that it is not against any rule of law, as the other case."

The agreement entered into between Armstrong and Wilbur, July 17, 1835, which was referred to as affecting this right, we do not see has any effect to vary the rights of the parties in this respect. That agreement is intended to create a new right in the contingency that Wilbur should purchase the right of his co-tenants. There was no conveyance of any lands to which it could be appurtenant by implication, and it is not expressly made appurtenant to any. It must have been when it came in esse a right in gross, and, had it been intended to be appurtenant, it was not in esse at the time of Armstrong's conveyance to the plaintiff, so as to pass by the deed.

Neither can the exception in the covenant of warranty made by Wilbur in his conveyance to the defendant vary those rights. There was a right of common in the estate conveyed, appurtenant to the nineteen and three quarters acres, and he excepts, " a right which the owner of the adjoining farm has," and his exception was equally necessary to his protection, whether the right were appurtenant to the whole farm or to the smallest portion of it only. It is a recognition of such right to some *extent* and is sufficiently answered by the smallest extent.

We are then upon the whole, of the opinion that the deed from Joseph W. Taylor *to* Nicholas Taylor, of the thirty acres, operated as a severance and apportionment of the common, and that the part apportioned to the thirty acres became extinguished and lost, but that the conveyance did not operate to extinguish the residue of the common apportionable to the nineteen and three quarters acres, and that so much passed by Armstrong's deed of July 4th, 1835, to the plaintiff, with a right of way as incident to it and *necessary to the* enjoyment.

Had the plaintiff remained owner of the whole of this lot of nineteen and three quarters acres, he would still have been entitled to the common appurtenant.  But his right has again been affected by his conveyance to Robert H. Ives, of nine and three-quarters acres, part of the nineteen and three-quarters acres.  Had he made no reservation of the common in that deed, there would have been an apportionment and Ives would have taken the portion belonging to nine and three-quarters acres, for though such common may be apportioned, it could not be severed from the estate and granted over, *Drury* v. *Kent*, (Cro. J. 15.) and, because it could not be severed, the plaintiff could not retain it to himself.  If it exist at all, it must exist with the estate, the uses of which it is to attend and minister to.

The plaintiff then, at the time of filing his bill in this case, had a right of common to take from the shore of the defendant's estate sea-weed and gravel, and stones below highwater mark, at all times at his will and pleasure, for such purposes as he might think proper to use them upon his estate ; but this right did not extend to the thirty acres, to which Armstrong derived title under the mortgage of Nicholas Fry to the Bank of Rhode Island, all right being extinguished as to that, but was limited to that portion of the nineteen and three-quarters acres conveyed by Joseph W. Taylor to Armstrong, by deed of August 12, 1812, which the plaintiff has not conveyed to Robert H. Ives ; and he had also, a right of way to and from his said land to the shore for the purpose of exercising this right as incident and necessary to its enjoyment.

This is the extent of his right in our view upon the deeds and conveyances put before us.