ALBANY,
January, 1819.

LIVINGSTON
v.
TEN BROECK.

---

## LIVINGSTON *against* TEN BROECK.

Where the words of an ancient deed are equivocal, the usage of the parties, under the deed, is admissible to explain them.

So, where the grantor in a deed, executed in 1694, gave to the grantee the privilege of cutting timber, to be used for building on the premises conveyed, from the woods of the grantor, evidence that the grantee, and his heirs, &c. with the knowledge of the grantor, his heirs, &c. had cut wood for the purpose of erecting fences on the premises, is admissible to show the intention of the parties, to apply the word *building* to the making of fences, as well as to the erection of houses and barns.

And, *it seems,* that at this day, the term *building* is, in *common parlance,* applied to the making of fences.

Common appurtenant may be apportioned.

But where the owner of land, to which common is appurtenant, purchases part of the land out of which common is to be taken, or the owner of part of the land out of which common is to be taken, purchases the land, or part of the land, to which the common is appurtenant, the right of common becomes extinct, not only as to the part, but as to the whole.

THIS was an action of trespass for breaking and entering the plaintiff's close, in the town of *Livingston,* in the coun-

ty of *Columbia*, and treading down, &c. the grass and corn, tearing up, &c. the earth and soil, cutting and carrying away the hay and grain, cutting and carrying away the trees and underwood, and breaking and destroying part of the fences; and for breaking and entering the plaintiff's close, in the town of *Gallatin*, in the said county of *Columbia*, and cutting down, &c. the trees and underwood. The defendant pleaded not guilty, with notice, that he would give in evidence, at the trial, that before and at the times the trespasses were supposed to have been committed, the defendant was possessed of, and entitled to, a right and privilege of grazing his cattle in the woods of what is now commonly called the manor of *Livingston*, not yet appropriated or fenced in; and, also, of cutting and hewing timber for *building* or *firewood*, so much as the farm, formerly occupied by one *Jacob Vosburgh*, should have occasion for, and the half, or moiety, of a small plain, or flat, of ten or twelve *morgans*, (acres;) and the supposed trespasses were committed on premises situated in the said manor, by virtue of the said privilege. And that the defendant would further give in evidence, that he, and his ancestors, had, from time immemorial, been possessed of and enjoyed the right of grazing their cattle in the woods of the manor of *Livingston*, not then, nor yet appropriated or fenced in; and of cutting and hewing timber, &c. as much as the farm, formerly occupied by *J. Vosburgh*, and since in the possession of the defendant and his ancestors, should have occasion for; and the half, or moiety, of a small plain, &c. The cause was tried before the honourable *James Kent*, then Chief Justice, at the *Columbia* circuit, in *October*, 1813.

At the trial, the plaintiff gave in evidence, that one *Christian Colepaugh*, in the winter of 1812, by the direction of the defendant, made 1,000 rails, and cut 400 stakes, in a wood lot in the manor of *Livingston*, which had been lately laid out as a wood lot for the plaintiff, as one of the proprietors of the manor; that the lot was part of the common of the manor, and that the rails and stakes so cut were carried on the defendant's farm and there used.

The defendant gave in evidence, a deed, dated the 29th of

ALBANY,
January, 1819.

LIVINGSTON
v.
TEN BROECK.

ALBANY,   *October*, 1694, from *Robert Livingston* to *Derick Wessels*, in
January, 1819. fee, for a certain piece of land in the *manor of Livingston*,
LIVINGSTON containing " five and twenty hundred men's treads, or paces
TEN BROECK. square ;" also, " the half, or moiety, of a small plain, or
flat, which lies, &c. being ten or twelve morgan at the
most ;" and, also, six hundred acres of woodland, &c. ; and
he did " further grant unto the said *Derick Wessels* and his
heirs forever, the privilege of grazing of his cattle in the
woods of the said *Livingston*, in the manor, not yet appro-
priated or fenced in ; and, also, for cutting and hewing of
timber for building or firewood, so much as the said farm,
now occupied by *Jacob Vosburgh*," (being the premises
first granted and described in the deed,) " shall have occa-
sion for ; and the said half, or moiety, of the small plain, or
flat, of ten or twelve morgan, and no more ; and the said *Ro-
bert Livingston* reserved to himself, and his heirs and assigns
forever, the cutting and hewing of timber, and grazing, in
the five and twenty hundred treads, or men's paces, that is to
say, in the woods not appropriated or fenced in, in the five
and twenty hundred treads square, then conveyed to the said
*Wessels*, together with," &c.    The defendant deduced a re-
gular title to himself from the grantee, *D. Wessels.*

The Chief Justice ruled, that the words in the grant, giving
the grantee the right of cutting timber *for building or fire-
wood*, did not extend to give him a right of cutting timber
for building *fences* on the premises ; whereupon, the de-
fendant's counsel offered to prove, that the defendant and
his ancestors, owning and occupying the farm formerly oc-
cupied by *J. Vosburgh*, had, with the knowledge of the
grantor, and of his heirs and devisees, and without moles-
tation, exercised the right of cutting and carrying away
from the commons, in the manor of *Livingston*, timber for
building and supporting the fences, on the premises convey-
ed, for as long time back as the memory of man can reach.
The evidence was objected to, and was over-ruled by the
Chief Justice, who held, that it was inadmissible, either as
explanatory of the intention of the parties to the original
deed, and their representatives, or as establishing a pre-
scriptive right, or in any way supporting the defence set up

by the defendant; to which opinion the defendant's counsel excepted.

The plaintiff gave in evidence a deed, dated *May* 4th, 1796, from the defendant and his wife to *Henry Livingston*, in fee, for 446 acres, three roods, and thirty-four perches, of land : a lease from year to year, purporting to be executed for the purpose of vesting the possession in the lessees, to enable them to receive a release, dated the 30th of *May*, 1796, from *Derick Wessels Ten Broeck*, the father and devisor of the defendant, and *Dorothy* his wife, to *Seth Curtis* and *Thomas Brodhead*, for nine acres and seventeen perches ; and a deed, dated the 24th of *February*, 1802, from *John Sanders* and *Albutina* his wife, who was a daughter and devisee of *D. W. Ten Broeck*, to *Thomas Brodhead*, in fee, for twenty-nine acres, three roods, and twenty perches. The defendant's counsel objected to the reading these deeds, but the Chief Justice allowed them to be given in evidence, and charged the jury that those deeds operated in law, as an extinguishment of all right of common to which the defendant might otherwise have been entitled under the original deed. A verdict was rendered for the plaintiff, and the defendant tendered a bill of exceptions to the opinion of the Chief Justice.

*Van Buren*, (Attorney General,) for the defendant.

1. The right of common was not extinguished by the severance of the premises. It is common appurtenant, and may be apportioned by alienation of a part of the land to which the common is appurtenant. (*Co. Litt. Villenage*, 122. *a.   Sacheverill* v. *Porter, Cro. Car.* 482.   *Wyat Wild's Case*, 8 Co. 156, 157.   *Tyrringham's Case*, 4 Co. 36, 37, 38.   *Vicars* v. *Langhan, Hob.* 235.   *Noy's Rep.* 30.   2 *F. N. B.*, 180, 181. (N).)

2. The construction of the deed ought to be favourable, so as to prevent a forfeiture ; *ut res magis valeat quam pereat. (Corbet* v. *Stone, T. Raym.* 142.   3 *Newman's Convey.* 221.   2 *Roll. Abr.* 56.)

3. Parol evidence of usage, or the practical construction given to the words of the grant, " timber for building and firewood," by the acts of the parties, ought to have been ad-

mitted.   *Coke* says, *optimus interpres rerum usus ;* that
where franchises are claimed under an ancient charter, and
the words are obscure, and the party claiming expounds
them, and shows a continual possession according to that ex-
position, the inquiry always is, as to the *possession and use.*
(2 *Inst.* 282.)   It is an established rule, that where the lan-
guage of ancient deeds and charters is obscure, or their
construction doubtful, resort may be had to usage, and the
uniform practice under the instrument ; for such continued
usage is the best practical exposition of the meaning of the
parties. (3 *Atk.* 576.   *Cowp.* 819.   3 *Term Rep.* 279. 288.
note.   4 *Term Rep.* 810.   6 *Term Rep.* 388.   4 *East*, 327.
7 *East*, 199.)

*James Strong* and *E. Williams*, contra.   The parol evi-
dence offered was not to any matter pleaded, or contained
in any notice, and was, therefore, inadmissible.   The fact
of trespass is not denied.   The defendant *prescribes* for a
right of common.   There is much confusion in the books,
as to common *appendant* and common *appurtenant.*   The
distinction seems to be, that common appendant is attached
to *arable* land only, and is inseparably incident to the grant.
It arises from necessity, and is founded on common right.
Common *appurtenant* is against common right, and must be
created by deed or grant, and may be prescribed for.

[*Van Buren.*   I agree that the right claimed here, is of
common *appurtenant.*]

The defendant relies on the deed of 1694, and the right
conveyed by it.   The defendant did not show that the *rails,*
or common estovers, were carried on to the *Vosburgh* farm.
After he has established his right, he must show, affirma-
tively, that the rails were necessary for the *occasions* of that
farm ; for the right prescribed for, is, " for cutting and
hewing of timber for building or firewood, so much as the
said farm now occupied by *Jacob Vosburgh,* shall have *occa-
sion for.*"   The matter set up in justification must be as
clearly and distinctly proved, as if the defendant was a
plaintiff suing to establish the right.   (*Van Sickler* v. *Jacobs,*
14 *Johns. Rep.* 434.)

Again ; a man cannot prescribe for common appurtenant to *a farm*, because it is uncertain what a farm consists of, whether of 10 acres or 100 acres. (5 *Vin. Abr.* 33. *Common*, (K.) pl 14.) unless he shows that it was *antient* farm or *arable* land. The evidence showed this to be *wood* land. This is a prescription in *person*, not in a *que estate*. " All prescription must be either in a man or his ancestors, or in a man and those whose *estate* he hath ;" (2 *Bl. Comm.* 264. 1 *Saund.* 349. note 10. 346. n. 2.) and whoever claims any common in right of a *freehold* estate, must prescribe for it in a *que estate*. The defendant has not averred a seisin in fee of the *Vosburgh* farm, nor is there any proof of such seisin. It does not appear, whether he was in possession, or was seised of the farm. It is admitted, that the 1,500 acres, and *Vosburgh's* farm, were not the same. The defendant ought to set out his common specially. (17 *Vin. Abr. Prescription*, (Y.) pl. 28. pl. 12.)

It is said, that by a just construction of the words of the deed, the defendant was entitled to the *estovers* which he claims. " Timber for *building*," does not, in the legal signification of the words, mean timber to make a fence ; nor have they that meaning in *common parlance*. The grantor does not use the technical word *estovers*. (2 *Bl. Comm.* 35.) *House-bote* may include *fire-bote*, but not *hedge-bote* or *fence-bote*. The words of the grant are peculiar ; " cutting and *hewing* of timber for building or firewood." *Hewing* of timber can only apply to such as is to be used in building. These grants of common of estovers are to be construed strictly. As where a person has common of estovers, annexed to his house, and he makes alterations and additions to the house, he cannot employ any of these estovers in the parts newly added. So, if the owner of the soil cuts down part of the wood, the person entitled to estovers cannot take any part of the timber cut down. (4 *Co. Rep.* 87. a. *Cro. Eliz.* 820. *Plowd.* 381. *Cruise's Dig.* tit. 23. sec. 28. 30.) There could have been no reason or occasion, in this case, for granting *fence-bote*, for there was an abundant supply for fences in the land granted, which was all wood, except a small possession. To let in parol evi-

ALBAŇY,
January, 1819.

LIVINGSTON
v.
TEN BROECK

dence, there must be some *ambiguity* ; and there is nothing ambiguous in the words of this deed.

Again ; common of estovers, or fence-bote, or fire-bote, cannot be apportioned, unless such apportionment be for the benefit of the one party, and without injury to the other. The law will not, by its own operation, work an injury to any person ; as, where it casts a descent, it does not extinguish the common. An apportionment, in this case, would produce manifest injury to the grantor. Suppose this farm, divided into 1,500 parts or possessions, and that all the wood to sustain them is to be taken from the commons, would it not be greatly surcharged, to the injury of the landlord? (*Co. Litt.* 164. *b. Parceners. Co. Litt.* 165. *b.* 4 *Co.* 38. 3 *Vin. Abr. Apportion.*(A.) pl. 3. note (B.) pl. 21.) There is not a case to be found where the common of *estovers* of house-bote, or hedge-bote, is divisible. The cases mentioned by *Coke,* (*Co. Litt.* 122. *a. Viner Apport.* (B.) 21. 4 *Co.* 37. *b.*) are of common of *pasture,* which may be admeasured and enjoyed in parcels. (5 *Vin. Abr.* 12. *Common C. a.*) In *Bagshaw* v. *Eyre,* (*Cro. Eliz.* 570.) it was decided, that if A. has a house with common appurtenant in the lands of B., and conveys it to B., the common is extinguished, by the unity of possession. (*Brook. Abr. Exting.* pl. 19). Now, here was a sale from the defendant, in right of his wife, in fee, to *H. Livingston,* of 446 acres, with full covenants. (5 *Vin. Abr. Extinguishment,* (E. *a.*) pl. 12. 16. 18. 28.) The subject out of which the estovers or commons is to be taken, cannot be united to the estate to which the right of common is attached. Such a union extinguishes the right of common.

*an Buren,* in reply. The bill of exceptions brings up those points only, to which exceptions were taken. The Chief Justice having ruled, that the deeds from the defendant operated to extinguish all right of common, it would have been useless for the defendant to have offered any further evidence. The real question is, whether the right of common has been extinguished? The cases which have been cited to show the affirmative, are not analogous. The law always seeks to avoid the forfeiture of a right. The

deed or grant, contains no covenant against alienation.
The defendant, or his ancestor, did *no more than what they*
had a right to do.   The settlement of the country could
never be effected without the power of alienation; and if
the principle contended for by the counsel for the plaintiff
was to prevail, it would *destroy all rights of common.*
Where a defendant has a right of common in certain pre-
mises, and releases a part of the waste or common, he there-
by surcharges the common, which is injurious, and, there-
fore, the law says, by selling a part, he releases the whole
right of common; but the union of the land out of which
the common is to issue, with a part of the land to which
the right of common is attached, can work no injury to the
grantor.   By uniting the 400 acres to the great lot out of
which the common was to issue, the right of common, as to
the 400 acres, is extinguished, but that can be no injury to
the grantor.

SPENCER, J. delivered the opinion of the Court.   The
bill of exceptions in this case presents two questions : 1st,
whether the deed from *Robert Livingston* of the 29th of
*October,* 1694, to *Derrick Wessels,* granted the right of cut-
ting and carrying away rails for *fencing,* from the commons
of the manor of *Livingston ?*

2d.  Whether that right, if it once existed, has not been
extinguished ?

The deed of the 29th of *October,* 1694, conveys a large
tract of land, and gives the right of common of pasture in
the woods of the grantor, in the manor of *Livingston,* unap-
propriated as regards the whole tract, and contains this
clause; " and also, for *cutting and hewing* of timber for
building or firewood, so much as the said farm, now occupied
by *Jacob Vosburgh,* shall have occasion for, and the said
half or moiety of the small plain or flat of ten or twelve
morgan, and no more," reserving to the grantor, his heirs
and assigns for ever, " the cutting and hewing of timber in
the five and twenty hundred treads, or men's paces, *in the
woods not appropriated or fenced in.*"   Thus it appears,
that the right of cutting and hewing of timber for building
or firewood, was restricted to the farm then occupied by

ALBANY,
January, 1819.

LIVINGSTON
v.
Ten Broeck.

*Jacob Vosburgh,* and the half of the small plain; the deed having conveyed a much larger tract of land.

The bill of exceptions states, that the defendant deduced the right and title of *Derrick Wessels,* to all and singular the said premises, to himself; and, it appears, generally, that in the winter of 1812, one *Christian Colespaugh* made 1,000 rails, and cut 400 stakes in a wood lot, in the manor of *Livingston,* which had lately been laid out as a wood lot for the plaintiff, as one of the proprietors of the said manor, which lot was part of the commons of the manor, and that the rails and stakes so cut, were carried on to the defendant's farm, and there used; and it is proved, by the written directions of the defendant, that the rails and stakes so brought on to his farm, were cut under his authority. There is a total absence of proof how large the *Vosburgh* farm is, or that the rails were necessary for that farm, or that they were used thereon.

The Chief Justice decided, that the right of *cutting and hewing of timber for building or firewood,* contained in the deed of the 29th of *October,* 1694, did not give the privilege, or right of cutting or hewing timber for building fences on the said premises. The defendant's counsel then offered to prove, that the defendant and his ancestors, owning and occupying the farm formerly occupied by *Jacob Vosburgh,* had, with the knowledge of the said *Robert,* and his heirs and devisees, without molestation, exercised the right of cutting and carrying away out of the commons in the manor of *Livingston,* timber for building and supporting the fences on the said farm, for as long time back as the memory of man can reach. This evidence being objected to, was overruled.

It is to be kept in mind, that the grant of common is under a very ancient deed; and if the words are equivocal, it appears to me, that the evidence of usage ought to have been admitted.

The right of cutting and hewing of timber for *building,* extends to the cutting every kind of timber for every species of building. Even at this day, I apprehend, that, in common parlance, there is rail timber; and the making of

fences is not unfrequently called building fences.   It is im-
possible to say, at this day, what was the precise meaning
of the parties to the deed.    The sense in which their words
would have been understood, when the deed was given,
would control and govern their contract.    To my mind,
the words of the grant are so equivocal, that usage under it
ought to have been admitted, as the best expositor of the
intention of the parties.    I perfectly agree, that if the
words of a deed are clear and precise, leaving no doubt of
the intention of parties, usage will not aid in the exposi-
tion, and ought not to be admitted.

Lord *Coke*, in his 2d *Institute*, 282, says, that where any
franchise is claimed before the justices in *Eyre*, " by an an-
cient charter, though it had express words for the franchises
claimed; or if the words were general, and a continual pos-
session pleaded of the franchise ; or if the claim was by old
and obscure words, and the party in pleading, and expound-
ing them to the court, and averring continual possession ac-
cording to that exposition; the entry was ever, *inquiratur
supra possessionem*," &c. to which he adds, " I have observed
divers records of those *Eyres*, agreeable to that old rule,
*optimus interpres rerum usus*."

Lord *Hardwicke* says, (3 *Atk.* 577.) " in the construction
of ancient grants and deeds, there is no better way of con-
struing them than by usage ; and *cotemporanea expositio* is
the best way to go by."

Lord *Mansfield*, in *Cook* v. *Booth*, (*Cowper*, 822.   See
also, 3 *Term Rep.* in notes, 291 ; *Gape* v. *Handley*.) adopted
this principle.   Lord *Kenyon*, and Mr. Justice *Buller*, both
admitted the same rule.   (*Blankley* v. *Winstanley*, 3 *Term
Rep.* 286. 288 ; *The King* v. *Bellinger*, 4 *Term Rep.* 821.)
And Lord *Ellenborough*, in *The King* v. *Osbourne*, (4 *East*,
335, 336.,) considers it as established on the best authori-
ties in the law, that contemporaneous, and subsequently
continuing usage may be resorted to for the construction of
a charter.   *Peake*, in his Treatise on Evidence, (119, 120.)
and *Phillips*, in his excellent work, (419. &c.) both consider
usage as admissible to explain an ancient charter or grant.

If we could suppose the case, that a witness living at the
time of the grant, and of mature age, had been offered on

this trial, to prove what was meant by the words, " cutting and hewing timber for building," and whether building then meant the making of fences, as well as houses and barns, I presume there could be no objection to the testimony, for the meaning of words, and their understanding of them in *pais*, is certainly admissible proof. If a witness would be admitted, under these circumstances, and if, from the lapse of time, we are not to expect any proof of that kind, the next best evidence arises from the acts of the parties, which go to demonstrate the construction they put on the grant, and the sense in which they understood the words used. In the location of grants, when the words are equivocal, possession, which stands on the same footing as usage, has always been resorted to in explanation of the intent of the parties, and to give a construction to the location of the grant. It appears to me, therefore, that on authority, and principle also, the evidence of usage ought to have been admitted ; and we all agree, that the evidence ought to have been heard.

2. Has this right of *fence-bote* been extinguished ? It appears, that *Derrick Wessels Ten Broeck,* under whom the defendant claims as devisee, in 1796, conveyed between 9 and 10 acres of land to *Seth Curtis,* and *Thomas Brodhead ;* and that in *May* of 1796, the defendant conveyed 446 acres of land to *Henry Livingston,* and in 1802, *John Saunders* and his wife conveyed to *Thomas Brodhead* about 29 acres of land. There is no location of these deeds, and it is asserted, on the one side, that they convey a part of the *Vosburgh* farm, and at all events, a part of the tract to which common was reserved in the deed of 1694, to *Robert Livingston.* It is further insisted, that the defendant has not shown that he owns the *Vosburgh farm,* and also, that the conveyance to *Henry Livingston,* who is one of the heirs of *Robert Livingston,* operates as an extinguishment of the right to *fence-bote,* if it ever existed under the deed of 1694.

It is too late for the plaintiff to question the defendant's right to the *Vosburgh* farm, for, as I understand the case, it admits, that the written testimony introduced by the defendant, deduced the right and title of *Derrick Wessels* to all and singular the said premises, (referring to the deed from *Robert Livingston* to *Derrick Wessels*) to the defendant. Evi-

dence might have been given, with propriety, to show the extent of the *Vosburgh* farm, in order to prove that the rails cut were necessary for that farm ; but the construction adopted by the judge, of the deed of 1694, precluded the necessity of that inquiry. Inasmuch, then, as the plaintiff has not located the deeds produced in evidence, from the defendant and his devisor, we cannot say that they embrace any part of the *Vosburgh* farm ; and if it be conceded, that they embrace part of the other land conveyed by the deed of 1694, and that *Henry Livingston*, as one of the heirs of that grantor, had a right of common by the reservation in that deed, it could not extend to the *Vosburgh* farm. I perceive nothing which can work an extinguishment as to the commons to which the *Vosburgh* farm had a right ; for the reservation is expressly confined *to the woods not appropriated or fenced in.* The *Vosburgh* farm was an appropriation, and, therefore, would be excluded from the right reserved.

I do not see how the question of extinguishment could arise, upon the facts detailed in the case, and must conclude, that there ought to be a new trial.

The case is, undoubtedly, very imperfect, and if a new trial is to be had, it may be desirable to both parties, for the court to express an opinion upon assumed facts. Indeed, until I had given the case a more critical examination, I had supposed it presented this question ; whether a conveyance by the defendant, to *Henry Livingston*, who was admitted to be the owner of part of the manor of *Livingston*, subject to common to the proprietor of the *Vosburgh* farm, of a part of the *Vosburgh* farm, produced an extinguishment of the whole right of common for the *Vosburgh* farm ; and this involved the inquiry into the nature of this common, and whether there can be an apportionment of it. I proceed, therefore, to examine these points.

The common claimed by the defendant, is admitted to be common *appurtenant*, and it is *gross ;* being for so much timber for building and firewood, as the farm occupied by *Vosburgh* shall have occasion for. Can such common be apportioned ?

Upon a careful examination of all the cases, I am satisfi-

ALBANY,
January, 1819.

LIVINGSTON
v.
TEN BROECK.

ALBANY,
January, 1819.

LIVINGSTON
v.
TEN BROECK.

ed, that common appurtenant can be apportioned. (*Co. Litt.* 122. *b.* *Cro. Car.* 482. 8 *Co.* 156. *Hobart*, 235. 5 *Vin.* 17. pl. 19.)

The next inquiry is, whether this sale to *H. Livingston* extinguished the defendant's right to common, admitting that he conveyed to him part of the *Vosburgh* farm?

The principle which runs through the cases, is this : that the land which gives a right of common to the owner, shall not be so alienated as to increase the charge or burden on the land out of which common is to be taken ; and that, when the right is extinguished or gone, as to a portion of the land entitled to common, it is extinct as to the whole ; for in such case, common appurtenant cannot be extinct in part, and be *in esse* for part, by the act of the parties. *Tyrringham's case*, (4 *Co.* 36.) is a very leading case, and it only requires to be understood to command respect. *Tyrringham* was seised of a house, 44 acres of land, 7 acres of meadow, and 2 acres of pasture, to which house and lands a right of commons was attached, of pasture for oxen, &c. as well in 30 acres of the same town, on which *John Pickering* was seised, as in 40 acres of which *Boniface Pickering* was seised. *Boniface Pickering* being seised of the 40 acres, purchased to him and his heirs, the 44 acres of land, 7 acres of meadow, and 2 of pasture, which *Tyrringham* owned, to which the right of common belonged ; and thus became seised, by uniting in himself the lands entitled to common, and 40 acres subject to common ; and he demised the lands entitled to common to one *Pheasant*, who put into the 30 acres belonging to *John Pickering*, two cows, to use the said common. For driving out these cows, an action of trespass was brought, and it was resolved, that the common was appurtenant ; and it was adjudged, that by the said purchase, all the common was extinct, on the ground, that common appurtenant could not be extinct in part, and *in esse* in part, by the act of the parties ; but the court distinguished between common *appendant*, and common *appurtenant*.

In *Wild's Case*, (8 *Co.* 156.) *Tyrringham's* case was recognized to be law, and the distinction was taken between

common appendant, and common appurtenant. (See also,
5 *Vin.* 17. pl. 19.)

If, then, it shall be proved, that *H. Livingston* is seised of part of the land subject to common; and has purchased of the defendant part of the land entitled to common, the same consequence results. There would be an extinguishment of the right of common in part, by the unity of title in one and the same person, to part of the land entitled to common, and a part of the land out of which common is to be taken, and then the principle applies, that if common appurtenant be extinct in part, it is entirely gone.

I cannot find that the doctrine of *Tyrringham's* case has ever been overruled; on the contrary, the principle on which it is grounded has been recognized. Thus, in *Rotherham* v. *Green*, (*Cro. Eliz.* 593.) *Rampton's* case was recognized as good law, in which it was adjudged, that where one having common in a great field, wherein many more had land, purchased an acre from one of them, the common was extinct. All the cases in which it is held, that common shall be extinct, by alienating part of the land entitled to common, or by purchasing the lands in which common is to be taken, proceed on this principle, that injustice shall not be done to the owners of land subject to common.

In the case under consideration, if *Henry Livingston* acquired a right by purchasing part of the *Vosburgh* farm, to take common of *hedge-bote*, his interest would induce him not to take it out of his own land, subject to common; and thus an additional burthen might be thrown on the owners of the other part of the lands out of which common was to be taken.

Had the defendant sold part of the *Vosburgh* farm to a stranger, this could not have happened, and in such case there might be an apportionment.

The case, therefore, wholly turns on the fact, whether *H. Livingston* purchased any part of the *Vosburgh* farm? If he did, the defendant's right is wholly extinct; if he did not, then it is not extinguished.

ALBANY,        There must be a new trial, with costs, to abide the
January, 1819.  event.