SAMUEL POPE et ux.

*v.*

JAMES BELL.

1. The complainants execute and deliver a deed to the defendant, conveying to him a lot of land adjoining another lot owned by Mrs. Pope, on which is a large building, which deed contains this reservation and covenant: " And the parties of the first part do hereby reserve out of the above-described property a space three feet wide, running from the rear of Pope's Hall, or where the water is taken from the said hall, across the said lot to Prospect street, for the purpose of carrying off the water and sewages from the said hall, and also nothing shall be built or erected on the said lot to obstruct the light from the said Pope's Hall."—*Held,* that the phrase " Pope's Hall " included not only a single room used as an audience-room, but the entire building, and that the defendant should be enjoined from erecting any building on the lot conveyed to him that will interfere with the reasonable use of the light in said hall.

2. A grantee accepting a deed containing such a covenant becomes the covenantor; and the rule that covenants are to be construed most strongly against the covenantor, applies to him.

---

*Mr. John S. Barkalow,* for complainants.

*Mr. A. B. Woodruff* and *Mr. G. A. Hobart,* for defendant.

BIRD, V. C.

The facts upon which the settlement of the issue between these parties depends are fully stated in the opinion of the chancellor (*8 Stew. Eq. 1*), in which he denied a motion to dissolve the injunction previously granted. It is there said: "The decision of the question will principally depend on the conclusion to be judicially reached as to what is to be judicially understood by the designation 'Pope's Hall,' whether it is the whole building or only the room so called." This phrase occurs in the deed of conveyance in this sentence: "And the parties of the first part do hereby reserve out of the above-described property a space of three feet wide, running from the rear of Pope's Hall, or where the water is taken from the said hall, across the said lot to Prospect street, for the purpose of carrying off the water and sewages from the said hall, and also nothing shall be built or erected on the said lot to obstruct the light from the said Pope's Hall."

The court is called upon to say what the parties understood by "Pope's Hall." Was it an entire building, or only a large room embracing the second story?

The grantors reserved three feet wide, running from the rear of "Pope's Hall, or where the water is taken from said hall, across said lot to Prospect street, for the purpose of carrying off the water and sewages from said hall." The grantee covenanted that nothing should be built on said lot to obstruct the light of said "Pope's Hall."

It is the duty of the court so to expound this deed as to carry into effect the intention of the parties. *Platt on Covenants, \*136 ; 2 Greenl. Cruise 586 ; Coster* v. *Monroe Manufacturing Co., 1 Gr. Ch. 467.*

In order to ascertain this intent, the situation of the parties and the character and description of the subject-matter will be considered. *2 Greenl. Cruise 587, note 1 ; Reed* v. *Proprietors, 8 How. (U. S.) 274 ; Dunn* v. *English, 3 Zab. 126.*

In case of ambiguous or doubtful words or phrases, they are to be taken most strongly against the covenantor. *Platt on Covenants \*141; Dunn* v. *English, 3 Zab. 126; 2 Greenl. Cruise*

Pope v. Bell.

*594, and note 1 ; Gifford v. First Presbyterian Society, 56 Barb. 114; Warde v. Warde, 16 Beav. 103.*

It is said that in the construction of covenants no attention is paid to the acts of the parties or to the interpretation they may put upon them. *Platt on Covenants* *144. This principle appears to be firmly rooted in English jurisprudence, as the authorities cited by Platt show. This doctrine, if recognized in this country, has many reasonable exceptions. *Livingston v. Ten Broeck, 16 Johns. 14; Inhabitants of Cambridge v. Inhabitants of Lexington, 17 Pick. 222 ; Stone v. Clark, 1 Metc. 378.* I think the cases in this country will justify the court in considering the conduct of the parties, and such distinct admissions as may be contrary to the interpretation sought to be enforced. But this view does not include any such interpretation as the parties may choose to make, after the controversy has opened, under oath, or otherwise. Consequently, all of the testimony of the parties to this suit pertaining to this point must be considered out of the question, except so far as such testimony may include statements or admissions of facts against the interest of the witness.

The facts which I regard undisputed and which I rest my judgment on, are next presented.

The grantee, the defendant, became the lessee of the lot in 1861, which he purchased in 1865. He took possession and occupied the building thereon as a dwelling and place of business in the years 1862 and 1863, during which Mrs. Pope built the building which, she says, is Pope's Hall. That building is seventy-five feet in length, fifty of which adjoin the building on the lot conveyed to the defendant. In the extension, beyond the fifty feet, are the six windows, two in each story, which overlook the lot conveyed to the defendant.

In the front of the building of complainant, and above the ceiling of the second story, is a tablet, on which the words "Pope's Hall" are carved. This tablet is so located by Mr. Post, who superintended the construction of the building. It is true that the defendant says it is inserted directly in front of the hall in the second story, which, if true, in my judgment, makes

32·

no difference.   There is some testimony to the effect that busi-
ness men in Paterson referred to this building as " Pope's Hall."
I do not rest this case on such evidence.   I cannot think any
rule would tolerate it.   Water-pipes were so constructed as to
lead the water from the roof of the entire building down to the
ground at the rear, and from thence it was carried by a small
wooden sewer to Prospect street, over the lot conveyed to de-
fendant.   At the time of the conveyance this was the only appa-
ratus of the kind in or about the complainant's building.   There
were no other sewage arrangements.   The defendant thinks
there were accommodations for ladies in connection with the
second story in the year 1864, but the weight of testimony is
against him.

In this testimony four facts exist to aid the judgment of the
court, viz., the tablet in front of the building, inscribed " Pope's
Hall;" the water-pipe carrying the water from the roof over all;
the windows in the cellar in the first story, and in the second
story or audience-room, overlooking the land conveyed, and the
audience-room.   These, certainly, were all in the minds of both
parties.   At the time and since, the first story of complainants'
building was and has been used in conducting different trades
and pursuits.

The lot which these windows overlooked at the time of the
conveyance, had on it a board fence nine feet high and a water-
closet.   It so remained for sixteen years.   But the defendant
says he " most assuredly contemplated " building a one-story
structure on it, such as he has now commenced, notwithstanding
he has delayed it sixteen years.   He says when the architect
asked him why he did not cover the entire space, that he " told
him not to obstruct the light; to prepare plans not to obstruct
the light in Pope's Hall; in fact, of his entire building."   The
proposed building is to be located six feet and one-half from
Pope's; and whether in the original plan or not is disputed, but,
in executing the design and model, the architect presents the side
next to Pope's, on an inclination from the latter of forty-five de-
grees, thus giving that entire side a mansard appearance; and
the architect gives it as his opinion, when finished on this plan,

that it will not obstruct the light to Pope's building.    The instructions not to obstruct the light were given before this controversy arose.    The plans presented by the architect, I conclude, were altered afterwards.

The defendant offered Benjamin M. McGee as a witness.    He swore that he was present at a "conversation or discussion" between Mr. Pope and Mr. Bell, in which Mr. Pope said "he had made a reservation to himself of the two upper windows to prevent the erection of a building which would obstruct the light into the hall; he would not have made the reservation so far as Mr. Bell was concerned, but the property might change hands, and that was the reason for making the reservation."    As to this, it seems proper to observe, that seventeen years had passed, and that the witness had no interest in the subject-matter, and therefore no reason for recollecting this so long, except, as he says, "it continued in my mind more particularly when Mr. Pope and me had a law-suit."    It is equally important to observe that Mr. Pope denies ever making such statement, and that Mr. Bell is silent on the subject.    I think if this matter had been so discussed between Mr. Pope and Mr. Bell, in the presence of McGee, Mr. Bell would have remembered it.    Besides, the witness says he did not know whether the deed had been delivered or not.

I think all the material facts have now been detailed.

In my judgment, the entire building, as it existed at the time of the conveyance, was included in the covenant.    I think the parties so intended.    This view is most reasonable and consistent.    The building was named "Pope's Hall."    Before it was completed it was so called.    Mr. Bell occupied the adjoining building and must have known this fact.    When this hall was built it was carried back beyond the building occupied by Bell, and two windows were opened in the basement, two in the first story and two in the second, in the portion in the rear of the Bell house.    In every way the reason is much greater for having and preserving the light to the store and place of business on the first floor, than to the hall or audience-room on the second.    The former is supposed to be in constant use; the latter, not; the former is devoted to business requiring good light; the

latter, to purposes which can as well be conducted, and usually are, at night, and, of course, by artificial light. That something beyond the audience-room was contemplated by the parties, is incontrovertibly fixed from the fact that the water from the roof of the building was to be carried over the land conveyed. So that if that portion of the building which is above the audience-room is included in the general words of the covenant, it is quite impossible to say that the portion below is excluded. The reservation of the right to convey the water was of a space three feet wide from the rear of the hall. While not called upon to construe this reservation, it is proper to advert to it. This is a reservation of three feet of ground to be used for sewer purposes. It is definitely located at the rear of the hall, where the water is taken from the said hall. Being a reservation of an easement in the land, there can be no uncertainty as to its location; it is below the first story; and there, at the surface of the ground, is the point at which the water was to be diverted from the building. In making an explicit allusion to that point, the contracting parties speak of it as at the rear of the hall. They do not speak of it as at the rear of the basement, or at the rear of the first story. To these considerations should be added the facts that Bell held the land thus conveyed for sixteen years before he undertook to build; that when he did undertake, he left a space of six feet and one-half between his proposed building and Pope's; that he instructed his architect to make such design as would not obstruct the light to any part of Pope's building; and that after this bill was filed he ordered the designs altered so as to more effectually secure that end.

For the foregoing reasons, it seems plain to my mind that where the contracting parties spoke of "Pope's Hall," they intended the whole building and not a single room therein.

When Bell accepted the deed containing this covenant against obstructing these windows, to the extent of that covenant he became the covenantor; and the rule that covenants are to be construed most strongly against the covenantor applies to him.

I think the defendant should be perpetually enjoined from erecting any building or other structure on the lot referred to in

the bill that will obstruct or interfere with the reasonable use of the light in the first as well as in the second stories of said Pope's Hall. I will so advise, with costs.