# FRANK P. HAGERTY

*v.*

## JOHN LEE.

Where a court of law has determined the legal rights of two adjoining land-owners, H. and W., under a reservation in the deed from the one to the other of the right to construct a building upon the common line between them, with windows therein overlooking the land conveyed, and H. erects such building, and the grantee of H. afterwards also erects a building upon the common line, obstructing such windows, so as to prevent the ingress of light and air, this court will not interfere.

On bill for injunction.

*Mr. Irwin W. Schultz,* for the complainant.

*Mr. J. I. Blair Reiley* and *Mr. J. G. Shipman,* for the defendant.

BIRD, V. C.

Hagerty was the owner of a tract of land in the borough of Phillipsburg. He sold one-half of it to Winters, with a reservation in the deed in these words:

"The party of the first part reserving the right to the free use of the light and air over said tract above described, and in case he should build on the common line between the parties, he reserves the right to put windows in said building overlooking the tract above described. It being agreed between the parties hereto that in case either party builds on the common line for a distance of twenty-four feet, more or less, from the south edge of Main street, the line is to be in the middle of the foundation wall, the thickness of the wall to be at the option of the parties hereto, and that the expense of the wall and the partition to the roof of the building shall be equally borne, share and share alike, by each. The party of the first part further reserving the right to continue the wall in the same way and manner as last above mentioned, but the erection thereof to be at their own expense, with the further right to the use of the whole wall."

Hagerty v. Lee.

Winters joined with Hagerty in erecting buildings on the twenty-four feet front, putting the partition wall upon the common line according to the terms of the covenant. Hagerty continued his building back from the front towards the rear three stories high, placing the wall next to the lot so conveyed to Winters upon the common line between them. In the wall so built upon the common line he left openings for windows in each of the three stories. Winters also carried his building back beyond the said twenty-four feet, but placed the wall on the side towards the Hagerty lot about six feet from the common line. This part of the building was carried up three stories high. After Winters had so built he conveyed his lot to Lee, the defendant in this suit. In his deed conveying the title to Lee he made such reference to the covenant above set forth in the former deed as to make it part and parcel of the conveyance. After Lee took the title and possession, he commenced to build upon a portion of the space left by Winters between his building and that of Hagerty a frame structure, wide enough to reach from one building to the other and about eight feet in length, which, if completed according to his intention, will close the one window in each of the three stories, except a very few inches in each window, and will so prevent the ingress of light as materially to darken the dining-room of the complainant. Before this last structure was completed the complainant filed his bill, and asked that the defendant, Lee, be enjoined from completing it. An injunction was granted. The defendant filed his answer, and moved to dissolve the injunction. The chancellor dissolved the injunction, but in so doing he expressed an opinion indicating that, in his judgment, the complainant was entitled, under the reservation mentioned, to a reasonable amount of air and light. Whether the structure contemplated by the defendant deprived the complainant of such reasonable light and air was, in the judgment of the chancellor, to be determined by a jury in a court of law. In this view he was sustained in the court of errors and appeals.

The legal question so involved has been determined in the circuit court in an action brought by Lee against Hagerty in

trespass, charging him with entering upon his premises and destroying the said structure.   I have been furnished with a copy of the views expressed by the chief-justice in disposing of the case, and I here present them :

"The decision of this case depends on the construction of the clause in the deed from Hagerty to Winters reserving the right to light and air, as there can be no doubt that the building in question does obstruct the light and air.

"The question therefore is, whether the reservation is general, or whether it is so limited as not to prohibit such obstruction.

"The language of the clause is so wide in its reach that, if accepted in the full force of its terms, it would altogether prevent the grantee Winters and his privies from building upon the land conveyed.   It would be difficult to put up a building on these premises that would not, in some degree, affect the *quantum* of light and air stipulated for.   It is scarcely conceivable that this result was within the contemplation of the parties.

"When we look at the context we perceive that so wide a reservation was not intended.   This is conclusively shown by the arrangements of the instrument with respect to the erection of buildings on the division line.   The grantee, as well as the grantor, can put up such structures.

"Suppose the grantee should have constructed a building on the division line extending from the front to the rear of the lot; what then would have become of the reserved right to light and air?

"My construction of this reservation is this: it has the effect to forbid the stopping up (so as to prevent the access of light and air) such windows as the owners of the adjacent property may choose to construct at all times except when the owner of the servient tenement desired to *build* upon his property. Such windows cannot be shaded by erections for the purpose of closing the outlook into the property of the plaintiff, but the right to *build* upon the premises is unlimited.

"This conclusion justifies the putting up the building in question.

"I assess the plaintiff's damages at twenty-five dollars.

"Let judgment be entered in accordance with the above order."

Counsel for the complainant insisted that notwithstanding the views of the legal tribunal upon these very facts were against him, yet, under the covenants in the deeds mentioned, and the evident understanding of their proper interpretation by Winters, the first grantee, as displayed by his conduct in first allowing Hagerty to build on the common line his extension to the rear beyond the twenty-four feet, and then extending his own building to the rear a considerable distance but six feet distant from the common line, such an equity was presented as called for the

Hagerty *v.* Lee.

interference of this court in enforcing and maintaining such interpretation.   He insisted that the covenant was not meaningless, and that the court was justified in looking for an explanation of its terms in the proceedings of the parties thereto immediately after its delivery.   For this there seems to be some authority. Tindall, C. J., in *Shore* v. *Wilson, 5 Scott N. R. 1037, 1038*, after laying down the general rule as to the interpretation of instruments by the instruments themselves, says: " The true interpretation, however, of every instrument being manifestly that which will make the instrument speak the intention of the parties at the time it was made, it has always been considered as an exception from—or, perhaps, to speak more precisely, not so much an exception from, as a corollary to—the general rule above stated, that, where any doubt arises upon the true sense and meaning of the words themselves, or any difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence *dehors* the instrument itself; for both reason and common sense agree that by no other means can the language of the instrument be made to speak the real mind of the party." *Reed* v. *Proprietors &c., 8 How. 274; Dunn* v. *English, 3 Zab. 126.* " Where the words of an ancient deed are equivocal, the usage of the parties, under the deed, is admissible to explain them." *Livingston* v. *Ten Broeck, 16 Johns. 14; Inhabitants of Cambridge* v. *Inhabitants of Lexington, 17 Pick. 222 ; Stone* v. *Clark, 1 Metc. 378.*

But it must, nevertheless, be remembered, that, notwithstanding the chancellor supposed that Hagerty had secured a substantial right by his reservation, which could not be interfered with at the will of his grantee—the extent of that right to be determined, however, by a legal tribunal—the chief-justice has concluded that he had no substantial right whatever except at the pleasure of his grantee or his privies.   Of course, it must be seen that this at once becomes the guide for the action of this court. Equity follows the law.   It has no intention, nor even desire, to enlarge the boundaries of its jurisdiction.   It may err in judgment, and if it did not, there would be no occasion for a higher tribunal to overcome such imperfection of judgment.

The bill must be dismissed, with costs.