CITY OF MAYVILLE, Respondent, vs. METHODIST EPISCOPAL CHURCH OF MAYVILLE and others, Appellants.

*February 5—February 24, 1914.*

*Plats: Construction: Church as "public building:" Extent and character of use of property donated.*

1. In the construction of a plat, acts of the donor and acquiescence of the donee long continued are indicative of the donor's intent.

2. A lot designated upon a plat recorded in 1849 as "reserved for public buildings" was, seven years later, conveyed by the owners to a church society and the deed placed on record. Afterwards a church building was erected thereon and was occupied and used for church purposes for more than fifty years, during which time there were several conveyances by one church society to another, with confirmatory proceedings in court, and apparent acquiescence of the public in such occupancy and claim of title. *Held*, that a church, though not now considered a public building, has a *quasi*-public character; that the words of reservation must be construed to include a church; and that the grantee and its successors acquired the same interest in the lot as would inure to the owner or proprietor of a public building.

3. Such interest in the lot or use thereof cannot be limited to the bare maintenance of a place of worship thereon, but must include all such adjuncts or accessories as are usual, necessary, and convenient in connection therewith, such as cloak rooms, school or recitation halls or buildings, and a pastoral residence or parsonage.

APPEAL from a judgment of the circuit court for Dodge county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

This was a suit in equity brought by the city to compel the defendant corporation to remove its church from and to restrain the defendants from constructing a pastoral residence adjacent to its church on the south half of a certain lot or tract of land designated in a plat as "reserved for public buildings." The defendant claimed title in fee by grant and by adverse possession to the lot or tract in question. Judgment was given for the plaintiff for the relief demanded, except that it was found that the defendant was entitled by estoppel of the plaintiff to the reasonable use of its church thereon and of all that part of said tract lying south of a point therein ten feet north of the north line of the present church building thereon, so much being reasonably necessary for the use and enjoyment of said church building.

On October 11, 1849, a plat was, by the owners of the land platted, filed in the office of the register of deeds of Dodge county, and this plat was certified as required by law and recorded on the date last mentioned. At that time the land in question lay within the boundaries of the organized town of Williamstown in Dodge county, and the village of Mayville, which included within its boundaries the platted land, first came into existence as a municipal corporation by force of ch. 313, Laws of 1867, and became a city by ch. 130, Laws of 1885. It has since adopted the general charter law. The plat mentioned was made and recorded by several owners of contiguous lands, some of whom owned as tenants in common the particular tract which included the lot or tract in question, while others owned contiguous lands included in the

plat, but had no title to that portion of the platted land in controversy. On May 12, 1856, those parties to the plat who held the title to the land in question conveyed by quitclaim deed to the trustees of the First Baptist Church of Mayville "the south half of lot denominated in plat as 'reserved for public buildings,' same lying west of and adjoining public square in said village." This deed was recorded on March 3, 1857, in the office of the register of deeds in volume 8 of Deeds on page 494, and thereafter, and apparently in consequence of some destruction of this record, a copy was recorded in the same office on September 9, 1890, in volume 102 on page 403. On March 25, 1876, recorded April 19, 1876, this south half was conveyed by warranty deed by the trustees of the First Baptist Church of Mayville to the trustees of the Methodist Episcopal Church of Horicon and Iron Ridge to be used for church purposes as long as needed. This conveyance recites that it was made under an order of the circuit court, but no such order was found. The deed contains what are therein called conditions, to the effect that the grantee shall not use the property for purposes not sanctioned by the orthodox, shall not sell the property so long as it is needed for religious puprposes, but when not so needed shall have the right to sell and pay over the proceeds to the First Baptist Church and Society of the village of Mayville. On October 4, 1892, recorded May 11, 1898, in the office of the register of deeds, Miscellaneous Records, volume 15, p. 426, is a decree of the circuit court for Dodge county adjudging that the title of the trustees of the Methodist Episcopal Church of Horicon and Iron Ridge, received by them by virtue of a deed dated March 25, 1876, which was authorized by an order of the circuit court, is fully confirmed in the Methodist Episcopal Church of Horicon and Iron Ridge, but also ordering that the First Presbyterian Society of Mayville shall have privilege to use said property for the purpose of worship in connection with their church society at any time

when the said Methodist Episcopal Church was not using the same, the Presbyterian Society to pay half the expenses of maintaining the church, including lighting, warming, janitor, and repairs. On January 11, 1897, recorded August 17, 1898, the trustees of the First Baptist Church of Mayville conveyed the south half in question to the trustees of the Methodist Episcopal Church of Horicon and Mayville. On July 10, 1899, recorded August 28, 1899, the trustees of the Methodist Episcopal Church of Horicon and Mayville conveyed by quitclaim deed to the trustees of the *Methodist Episcopal Church of Mayville* in trust for the use and benefit of the ministry and membership of the Methodist Episcopal Church in the United States subject to the discipline, usage, and ministerial appointment of said church as from time to time authorized and declared, and, if sold, proceeds to be disposed of and used in accordance with the provisions of said discipline. On October 5, 1899, the Trinity Methodist Episcopal Church of Mayville executed a mortgage to the Board of Church Extension of Methodist Episcopal Church, a Pennsylvania corporation, to secure a bond for $250. On November 20, 1899, recorded December 6, 1899, the trustees of the Trinity Methodist Church of Mayville executed a mortgage thereon for $250 to the Board of Church Extension of the Methodist Episcopal Church of Philadelphia, Pennsylvania. On May 24, 1875, a suit was begun by one S. W. Lamoreux as a taxpayer in behalf of himself and other taxpayers against the village of Mayville to enjoin that village from expending public money on an engine house on said tract, for the reason that the village never had any title to said tract. The remainder of the record of this suit is lost, and what became of the action we do not know. In 1892 findings and judgment were made in a suit by the First Baptist Church and Society of the village of Mayville against the Methodist Episcopal Church and its trustees. These findings declared that the defendant went into possession by virtue of a deed from the trustees of.

the Baptist Church and Society of Mayville dated March 25, 1876, duly recorded and made under the authority of an order of the circuit court; that the plaintiffs in that action at the time of making said conveyance were the owners of said property and had full power and authority to deed and convey the same to the defendants, and that the defendants went into possession under that deed and remained in possession and were entitled to a decree confirming their title to said property to the defendant. Such a decree was entered October 4, 1892.

During this period of about fifty-four years the church building, repaired from time to time, was constantly maintained on the south half of the lot in question, but not always at the same place on said south half. The building was moved farther to the south and to the place where it now stands in 1899. The necessary excavations were made and the old excavation filled up and leveled off. An addition to the church was built and extensive improvements made at a large expense to defendant. There were other improvements made in 1907. The evidence with reference to acts of dominion by the church people is slight except as to the actual maintenance of the church building. There was some evidence of planting trees and also of hitching horses and such use as is ordinarily made of that part of a church lot not covered by the church building. This church building was owned by different religious denominations who succeeded one another in chain of title and was used at the same time by two as above stated, and it was also during a considerable portion of the time used for public gatherings and addresses. Carl Schurz lectured there as early as 1860. The certificates to the plat throw no light on the question. The plat itself is an ordinary plat consisting of named streets, numbered blocks and lots, and borders on the west side of the Rock river. Most of the streets converge on what is marked on the plat as "public square." East of this and separated from it by a

continuous line is part of a block not laid off into lots and marked with the word "reserved." West of this public square and inclosed within the apparent boundary lines of block 28 and separated from the public square by a distinct. boundary line is the tract in question, designated "reserved for public buildings."

For the appellants there was a brief by *Naber & Wheeler,* and oral argument by *Emil Naber.*

*Paul O. Husting,* for the respondent, contended, *inter alia,* that a dedication legally made is irrevocable. *Redwood Cem. Asso. v. Bandy,* 93 Ind. 246; *Hunter v. Sandy Hill,* 6 Hill (N. Y.) 407; *Macon v. Franklin,* 12 Ga. 239; 15 Cent. Dig. tit. Dedication, § 1, col. 2765. The dedicator and his grantees are estopped to deny or revoke the dedication. *Bates v. Beloit,* 103 Wis. 90, 78 N. W. 1102; *Weisbrod v. C. & N. W. R. Co.* 21 Wis. 602; *Gardiner v. Tisdale,* 2 Wis. 153; *Cincinnati v. White's Lessee,* 6 Pet. 431; *Getchell v. Benedict,* 57 Iowa, 121, 10 N. W. 321; 15 Cent. Dig. tit. Dedication, § 77, col. 2922; *Warren v. Jacksonville,* 15 Ill. 236; *Buntin v. Danville,* 93 Va. 200, 24 S. E. 830; *Methodist E. Church v. Hoboken,* 33 N. J. Law, 13, 97 Am. Dec. 696; *Thorndike v. Milwaukee A. Co.* 143 Wis. 1, 126 N. W. 881; *Still v. Lansingburgh,* 16 Barb. 107; *Williams v. Smith,* 22 Wis. 594. A church is not a public building. *Collum v. State,* 109 Ga. 531, 35 S. E. 121; 32 Cyc. 752 and note.

Timlin, J. It is quite probable that a church would not be considered a public building within the present popular acceptation of the words. How the words "public buildings" were used and understood sixty-five years ago with reference to churches generally or by the makers of that plat is not so clear. The words "public square," together with the omission of boundary lines, clearly indicate a dedication to the public, but the words "reserved for public buildings" are not so clear of meaning. They could be understood to mean

that the owners reserved this tract in question inclosed by lines to themselves to be by them conveyed only as a site for public buildings, although that is not the ordinary meaning. So a church could have been considered a public building because of its *quasi*-public character, although that is not now the ordinary meaning of the word. As bearing upon the interpretation of this plat we must consider that the owners of the land, seven years after making the plat and fifty-five years before this suit commenced, undertook to convey the south half of the tract to the trustees of the First Baptist Church of Mayville and made that deed a public record at the time. We must consider the different conveyances following this and based upon it made and recorded during these fifty-five years, the several proceedings in court above noted, and the apparent acquiescence of the public for such length of time in the claim to and occupation of the lot in question by the defendant and its grantors. Such length of time and such acts and acquiescence are potent in the law to work even greater changes than a particular construction of a somewhat ambiguous written instrument. *Tempus enim modus tollendi obligationes et actiones.* Peloubet's Legal Maxims, citing Fleta, 4, 5, 12.

We must hold that such construction was placed upon the plat in question that the defendant acquired the same interest in and to the south half of the lot or tract, designated as reserved for public buildings, as if it and its predecessors in title were in occupancy thereof holding such title as would inure to the owner or proprietor of a public building; that under the circumstances and under the construction so given to the plat and grants mentioned a church is a public building in this instance, although not now generally so considered. Acts of the donor and acquiescence of the donee long continued are indicative of the intention of the donor with reference to a plat. *Pott v. School Directors,* 42 Pa. St. 132. The same is true of a deed. *Janesville C. Mills v. Ford,* 82

Wis. 416, 430, 52 N. W. 764, and cases cited; *Livingston v. Ten Broeck,* 16 Johns. 14, 8 Am. Dec. 297. A church was thought to be a public building in *Comm. ex rel. Att'y Gen. v. Beaver Borough,* 171 Pa. St. 542, 33 Atl. 112, and church purposes public in *Hannibal v. Draper,* 15 Mo. 634.

 In view of the *quasi*-public character of churches generally and in consideration of the facts in this case as recited in the statement of facts, including the long acquiescence of the public in the use of this lot for such purposes, such use cannot be strictly limited to the bare maintenance of a place of worship thereon. A public building site must include all such adjuncts or accessories as are usual, necessary, and convenient in connection with the use of the property for public purposes. This would, in case of a church, ordinarily include cloak rooms, school or recitation halls and buildings, and a majority of this court, not however including the writer, consider that it would include a pastoral residence or parsonage.

It follows that the judgment appealed from should be reversed, and the cause remanded with directions to dismiss the complaint.

*By the Court.*—It is so ordered.

---

Toepfer, Respondent, vs. Sterr and others, Appellants.

*February 5—February 24, 1914.*

*Appeal: Harmless errors: Evidence: Refreshing memory: Entire contracts: Substantial performance: Special verdict: Matters omitted: Presumption on appeal: Election between remedies.*

1. Errors which might have tended to reduce a party's recovery if the jury had found in his favor must be deemed harmless where, under the verdict as found, he was not entitled to any damages.
2. A witness should not be allowed to refresh his memory by using a writing made by another person, unless he knows it to be correct.