In the Matter of the Application of GEORGE N. LADUE et al. for Leave to Sell Real Estate.

Where an owner of a tract of land conveys a portion thereof by deed which bounds the land conveyed, by a street described as laid out upon a map, and provides that it shall actually be laid out of a given width within a given time, the presumption is, the conveyance carries the fee to the center of the street.

As between grantor and grantee a street is created where land clearly defined as to extent and location is devoted to that end by the grant, although it is not then in condition to be used as a street.

In such case it may with propriety be referred to in the deed as an intended street; the reference being to physical condition, not to title.

In 1795, one S., being the owner of a large tract of land situate in the city of New York, executed a deed of a small portion thereof lying in the center of the tract. The land conveyed was described as beginning at the northermost corner of a meadow belonging to S., which was part of the land conveyed, and as bounded on one side by land of S., "intended for a road of two rods in width," as would appear by a "survey or map" stated to have been made. The deed contained a covenant on the part of the grantor "that the road of two rods wide, as aforesaid, to run along and adjoin the southerly and westerly sides of the premises * * * according to the aforesaid survey or map shall be laid out accordingly and run from the Bloomingdale road within one year from the date hereof, and ever kept open from that time." There was no way of approach to the premises conveyed except by the road provided for. The grantor subsequently conveyed the lands opposite bounding them by said road. The lane or road was used as such until 1846; it was abandoned as a street in 1868 pursuant to the act of 1867. (Chap. 697, Laws of 1867.) There had never been any adverse claim or possession on the part of S. or his successors in interest, and during that time awards, under the power of eminent domain, had been made to persons claiming title to the road through the deed in question. In proceedings to compel a purchaser to take title under a contract, to convey to him to the center of the road, *held*, that said deed gave title to the center; and that the vendor, who showed title thereunder, was entitled to the relief sought.

*Mott* v. *Mott* (68 N. Y. 246), distinguished.

*In re Ladue* (22 J. & S. 528), reversed.

(Argued November 26, 1889; decided January 14, 1890.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made March 14, 1887, which affirmed an order of the Special Term, denying a motion to compel Emerson Coleman a purchaser, to complete his contract for the purchase of certain real estate.

Prior to 1795 one Samuel Stillwell owned a tract of land in the city of New York that is now substantially encompassed by Eighth and Eleventh avenues and Eighty-fourth and Eighty-ninth streets in said city. On the 13th of September, 1886, Charles Dickinson, as the special guardian of Pomeroy and Norton Ladue, infants, entered into a contract in the usual form with Emerson Coleman for the sale of two undivided eighteenths of a small portion of said tract and thereby agreed in substance to convey to such purchaser the fee simple of said interest, upon payment of the consideration named. The contract was duly approved by the court and no question was raised as to its form or substance, but when the time for performance arrived Mr. Coleman notified the special guardian that he declined to complete the purchase because a good title could not be conveyed to that part of the premises formerly used as an old lane, known as Stillwell's road. A motion to compel performance was thereupon made in behalf of the special guardian based upon an affidavit setting forth a history of the title and a copy of the maps, records and deeds deemed material, and, among others, a deed from said Stillwell and wife, to Samuel S. Bowne, dated December 31, 1795. In opposition to the motion, an affidavit was read in behalf of Mr. Coleman, who, without denying any material fact alleged in the moving papers, stated that he was ready and willing to complete the purchase provided a good and sufficient title could be given him; that an old road known as Stilwell's lane or road, formerly ran through the premises in question; that the title to the land in such road was not good or marketable, because the roadbed was never conveyed to anyone by said Stilwell, who at the time of his conveyance to Bowne, owned other lands adjoining said road, and also adjoining the land conveyed by said deed; that he also owned

a large quantity of land, not adjoining the road, but so situated that it had no access to any highway except over said road; that in his conveyances to other purchasers, he did not give, by express words, any right of way, either over the road in question or over another road that he had laid out connecting therewith, called Spring street; that there remained to Stilwell, after he had given the deeds mentioned in the moving papers, no means of access to his other lands except the Stilwell road, and that his grantees had no way to their respective lands other than that road; that a calculation of the size of the tracts conveyed by the various deeds from Stilwell, shows that the land in the roads is not included in the area of the tracts as mentioned in the descriptions and that the part of the premises in question included in the old road was never enclosed until within the last few years.    It appeared that said lane was used, "as a public road from 1822 to 1846," but that it was abandoned as a street in 1868, pursuant to chapter 697, Laws 1867.

Further facts appear in the opinion.

*William Pierpont Williams* for appellant.    The deed from Samuel Stillwell to Samuel S. Bowne carried title to the center of Stillwell road.    (*Mott* v. *Mott*, 68 N. Y. 253; *K. C. F. Ins. Co.* v. *Stevens*, 87 id. 291; *Bissell* v. *N. Y. C. R. R. Co.*, 23 id. 61; *Pollack* v. *Morris*, 19 J. & S. 112; *Greer* v. *N. Y. C. & H. R. R. R. Co.*, 37 Hun, 346; *Bliss* v. *Johnson*, 73 N. Y. 529; *Miner* v. *Mayor, etc.* 5 J. & S. 171; *Story* v. *E. l R. R. Co.*, 90 N. Y. 145; *A. D. Co.* v. *Leavitt*, 54 id. 35; *Jones* v. *Cournan*, 2 Sandf. 234; *Livingstone* v. *Ten Broeck*, 16 Johns. 14; Phillips on Evidence [4th Am. ed.], 802; *French* v. *Carhart*, 1 N. Y. 96; *Putzel* v. *Van Brunt*, 8 J. & S. 501.)    There is now no right of way over Stillwell road which can be urged as an encumbrance upon the title.    (Laws 1867, chap. 697.)

*Edmund Coffin, Jr.*, for respondent.    The deeds of Stillwell to Bowne and Woolsey did not convey any estate in the land in the Stillwell road, but only an easement to use this

land as a road. (*Hussner* v. *B. C. R. R. Co.*, 96 N. Y. 18; *Hall* v. *W. W. P. Co.*, 24 N. Y. Wkly Dig. 494; *Bookman* v. *Kurzman*, 94 N. Y. 272; *Mott* v. *Mott*, 68 id. 246; *Perrin* v. *N. Y. C. R. R. Co.*, 36 id. 120; *Baldwin* v. *City of Buffalo*, 35 id. 375; *Cady* v. *Conger*, 19 id. 256; *Bissell* v. *N. Y. C. R. R. Co.*, 23 id. 61; *Perrin* v. *N. Y. C. R. R. Co.*, 36 id. 120; *People* v. *Colgate*, 67 id. 512; *White's Bank* v. *Nichols*, 64 id. 65; *English* v. *Brennar*, 60 id. 609; *Mott* v. *Mott*, 68 id. 246; *K. C. F. Ins. Co.* v. *Stevens*, 87 id. 287; *Story* v. *N. Y. El. R. R.*, 90 id. 122, 161, 162, 180–183; *Hussner* v. *B. C. R. R. Co.*, 96 id. 18; *People ex rel.* v. *Jones*, 112 id. 597.) The act of 1867, so far as it is relied upon to give title to this roadbed in the proposed grantors, is unconstitutional and void. (*N. F. S. B. Co.* v. *Bachman*, 66 N. Y. 261; *Newman* v. *Nellis*, 97 id. 285; *People* v. *Kerr*, 27 id. 188; *Cady* v. *Conger*, 19 id. 256; Valentine's Laws, 1176; *Rexford* v. *Knight*, 11 N. Y. 308; *B. P. Com'r* v. *Armstrong*, 45 id. 234; *Heath* v. *Barmore*, 50 id. 302; *Heard* v. *City of Brooklyn*, 60 id. 242; Cooley on Const. Lim. 556, 559; *Fearing* v. *Irwin*, 55 N. Y. 486; *King* v. *Mayor, etc.*, 102 id. 171; *In re John & Cherry Streets*, 19 Wend. 659; *People ex rel.* v. *Asten*, 49 How. Pr. 405; 62 N. Y. 623; *In re Barclay*, 91 id. 430; *Williams* v. *N. Y. C. R. R. Co.*, 16 id. 97; *People* v. *Kerr*, 27 id. 188; *Kelsey* v. *King*, 1 Trans. App. 133; *People* v. *Law*, 34 Barb. 494; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; *Van Amringe* v. *Barnett*, 8 Bosw. 357; *Mott* v. *Mayor, etc.*, 2 Hilt. 358; *Embury* v. *Connor*, 3 N. Y. 511; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Lahr* v. *M. E. R. R. Co.*, 104 id. 268; 1 Van Schaick's Laws, 303.)

*George Hoadly* for other parties in interest. Stillwell road was a public road of the city of New York until vacated by law. (*Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *People* v. *Lochfelm*, 102 id. 1; *Driggs* v. *Phillips*, 103 id. 77; Gerard on Titles to Real Estate, 736.) The deed of Samuel Stillwell to William W. Woolsey conveyed title to the south

half of Stillwell road. (*Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 63; *White's Bank* v. *Nichols*, 64 id. 70; *Mott* v. *Mott*, 68 id. 252; *K. C. F. Ins. Co.* v. *Stevens*, 87 id. 293.)

VANN, J. It is conceded that the respondent was not bound to fulfill unless at the time fixed for the completion of the contract a good and sufficient deed, conveying to him the fee simple of the interest contracted for, should be delivered or tendered. No question is raised as to the method of procedure, or as to a formal tender, and the objections to the title are confined to that part of the premises agreed to be conveyed over which the old Stilwell road formerly passed. The main point of contention is whether the deed from Stilwell to Bowne conveyed the northerly half of that road, or only an easement or right of way over it. The following are the material portions of that deed, commencing with the description of the premises conveyed, viz.: "All these certain pieces of meadow, cleared, upland, and woodland, situate, lying and being in Bloomingdale in the County and State of New York * * * bounded as follows, viz.: Beginning at the northermost corner of the meadow belonging to Samuel Stilwell * * * and running thence south * * * five chains and ten links along the land of the said Stilwell intended for a road of two rods in width." The description then continues, embracing many courses and distances, and closes with the words "to the place of beginning, according to a survey of the same by Cassimer Th. Guerck, city surveyor, bearing date the fifth day of December one thousand seven hundred and ninety-five; containing" a specified quantity of land, "bounded on the south on the land of said Stilwell intended for a road of two rods in width; on the east on the lands of said Stilwell and northerly on the lands of said Stilwell and Robert L. Bowne as will appear by the aforesaid survey or map." After the habendum clause was the following covenant: "And the said Samuel Stilwell doth hereby, for himself, his heirs, executors, administrators and assigns, covenant, promise and grant unto the said Samuel S. Bowne, his heirs, executors, administrators and

assigns  *  *  *  that the road of two rods wide, as aforesaid, to run along and adjoin the southerly and westerly sides of the premises hereinbefore granted to Samuel S. Bowne, according to the aforesaid survey or map, shall be laid out accordingly and run from Bloomingdale road within one year from the date hereof and ever kept open from that time." There was also a covenant to warrant and defend in the usual form. The premises thus conveyed were but a small part of the Stilwell farm, taken from the center thereof, with no way of approach thereto except the road provided for in the deed. There is no evidence before us that there was any survey or map of the entire tract in existence at the date of said deed, for it will be observed that reference is made, in the description, simply to "a survey of the same," meaning the land conveyed, and in a subsequent part of the instrument to "the aforesaid survey or map," referring back to the one mentioned in the description. In a later deed, dated July 10, 1799, whereby Stilwell conveyed premises south of the road and opposite those transferred by the conveyance now under consideration, allusion is made to "a survey and map of the farm of Samuel Stilwell" made by the city surveyor "in the year seventeen hundred ninety-six." What is supposed to be a copy of that map was produced upon the motion, showing on its face that it was "surveyed January, 1796, by Cassimer Th. Guerck for Samuel Stilwell," and also showing the lane in question, extending from the Bloomingdale road to Spring street. The map alluded to in the Bowne deed, however, was not produced, but we think that the road was laid down upon it, because Stilwell in his deed to Bowne covenants to lay out " *the* road " not " a road," " according to the aforesaid survey or map," along the southerly or westerly sides of the premises conveyed. The words, " the road," as used, imply an existing road, as laid out either upon the land, or on the map, and the expression " according to the aforesaid survey or map " refer to "the road," which was the object of the covenant, and not to " the premises hereinbefore granted," which are referred to simply for the purpose of describing the road. Whether the maps

are identical or not, therefore, the result is a conveyance according to a map, upon which the land granted was represented as abutting upon a street, with a covenant that the street should be laid out within one year and ever kept open from that time. The question now arises, what is the extent of such a grant? Does it go to the margin or to the center of the road as laid down upon the map? This depends upon the intention of the parties as gathered from the terms of the deed, the situation of the land and, where there is doubt as to the intent, from the practical construction of the grantor and grantee and their successors in title. (*French* v. *Carhart*, 1 N. Y. 96; *Putzel* v. *Van Brunt*, 8 J. & S. 501; *Livingston* v. *Ten Broeck*, 16 John. 14; Cowen & Hill's Notes to Phillips on Evidence, No. 526, p. 802.)

The construction, in case of ambiguity, should be most favorable to the grantee. (*Jackson* v. *Hudson*, 3 John. 375; *Jackson* v. *Blodgett*, 16 id. 172; *Gifford* v. *First Pres. Soc.* 56 Barb. 114.) The presumption is that a conveyance of land bounded by an existing street carries the fee to the center, because a narrow strip, such as half of a street, is much more valuable to the grantee than to the grantor and the parties are supposed to have so dealt with the property as to bring out its greatest value. (*Bissell* v. *N. Y. C. R. R. Co.* 23 N. Y. 61; *Wager* v. *T. U. R. Co.* 25 id. 526; *Perrin* v. *N. Y. C. R. R. Co.* 36 id. 120; *Wallace* v. *Fee*, 50 id. 694; *Mott* v. *Mott*, 68 id. 246; *Kings Co. Fire Ins. Co.* v. *Stevens*, 87 id. 287; *Sterry* v. *N. Y. El. R. R. Co.* 90 id. 122, 161.)

What is the presumption when the deed treats the street as existing upon a map according to which the conveyance is made and provides that it shall be laid out of a given width within a given time? Would not the reason of the rule extend the presumption to that state of affairs also? Under such circumstances, as between grantor and grantee, for the purpose of ascertaining the extent of the grant, should not the street be regarded as practically in existence at the date of the deed? Does not such a conveyance, of itself, make a street, so far as the parties thereto are concerned, by appropriating the land

to that purpose? Even if one part of the instrument refers to such land as "intended for a road," or street, should not that expression, as well as the covenant to lay out, when construed in connection with a map upon which the street appears as actually laid out, be held to refer to the development of the street for practical use by the removal of fences and obstructions? As between grantor and grantee a street is created when land, clearly defined as to extent and location, is devoted to that end by the grant, whether it is then in a condition to use as a street or not, although it would only be a street on paper until actually opened. Under such circumstances the parties might, with propriety, refer to it in the grant as an intended street, because not actually worked and used. Thus the reference would be to physical conditions, not to title. This view is confirmed by the fact that the grantor was to have one year within which to lay out the road, as he would need time to remove trees, fences, etc., but not to pass title, or dedicate a street.

In *Bissell* v. *N. Y. C. R. R. Co.* (*supra*) the owner of one-half of a city block conveyed parcels thereof to several purchasers, by lot numbers, "reference being had to the allotment and survey made by Elisha Johnson." This survey showed the lots as fronting upon a street, which, however, was merely projected and was never accepted by the public, and was not named in the deeds. The dimensions of the lots, in some instances, were so stated as to exclude the street. It was held that as between the owner and his grantees the proposed street was in fact a street, which they had the right to use as such the moment the conveyances were made, although as to the public generally it could not become a street until accepted by official act or common user. "As between them and him," the court said, "his conveyances, *per se*, dedicated it to their use as a street" and that as to them he could not be allowed to say it was not a street. It was further held that the title passed by the several conveyances to the center of the street. Thus the deeds operated not only to create the street, but also, through the presumption

arising from the fact that it was a street, to extend the grant
to the center thereof.  This result did not depend upon express
language, but upon the presumed intent of the grantor.  A
like result must follow the deed under consideration, unless the
usual presumption is clearly rebutted by the language used
therein.

The expression, near the close of the description, "bounded
on the south by the land of said Stilwell intended for a road,"
when considered with the expression at the commencement of
the description, "beginning at the northernmost corner of the
meadow belonging to Samuel Stilwell," shows that the grantor
alluded to all the land as his for the purposes of description
until the conveyance should take effect.  As he did not intend
to reserve the "meadow belonging to Samuel Stilwell," which
was a part of the property conveyed, can it be said that he
intended a reservation by the expression first named?  Did he
not in both cases treat the land as his own for convenience of
description merely?

Much importance was attached in the opinion below to the
covenant to lay out within a year, which was regarded as
unnecessary if the title passed to the center of the street.  It
will be noticed in this connection that in no part of the deed
was any right given, in terms, to use the road.  Still the
grantee would have been partially protected, because he pur-
chased on the faith of the map showing the road, but what
would be the result if the map were lost?  Something in the
nature of the covenant was therefore necessary as permanent
evidence of his rights.  Moreover, as the map did not specify
the width of the road and the deed only regulated its width as
it passed by the premises conveyed, the covenant was necessary
to secure a road of the desired width from those premises to
the Bloomingdale road.  The reservation by the grantor of a
given time within which to lay out the road, as well as the
agreement that it should be forever kept open, also explain
the necessity of the covenant, which should not be so con-
strued as to cut down the extent of the grant unless the
language used clearly requires it.

The case of *Mott* v. *Mott* (*supra*), is relied upon by both parties to this appeal. That case involved the question whether several conveyances carried the title to the center of a certain private lane. The deeds were according to a map, which, however, was not furnished to the court. The description ran to the side of the lane and thence along the same, which was held to mean along the side of the lane. The lane was not necessary to the convenient occupation of the land granted, which fronted upon a public highway. The grantors still owned land to which the lane was convenient if not necessary as a means of access. "There was a reason, therefore," as was said by the court, "why the grantors might desire to reserve the lane, while the grantees had no perceptible interest in keeping it up as a lane or passageway." The privilege of using the lane "from time to time and at all times forever hereafter with servants, laborers, horses, etc.," was expressly granted upon the condition, however, that the grantee was to pay his part of the expense of keeping it in repair. It was held that the express grant of an easement in the lane, in the light of the surrounding circumstances, showed an intent to limit the fee granted to the land outside of the lane. Referring to the grant of a right to use the lane the court said: "Standing as it does in juxtaposition with the description of the land and following it, and purporting to describe a separate and distinct right granted, to the passing of which the clause was thought necessary, it is part of the description of the whole premises and all the rights granted, and avows the intent to be in accordance with the words of the grant, viz. : to grant the land described and an easement in lands outside of the actual boundaries."

We think *Mott* v. *Mott*, far from being in conflict with *Bissell* v. *N. Y. C. R. Co.*, or with the views herein expressed, is an authority in line therewith, applying the same principles to a different state of facts. This appeal presents a case with three important facts, which together must control the decision : (1) A conveyance by a map showing the street; (2) non-accessibility to the land conveyed except over such street; (3)

an omission to convey an easement in the street. The *Mott case* had only the first of these features, for, while the convey-ance in that case was by map, there was access to the premises by a public highway, independent of the private lane, and the grant in express terms of a right of way over the latter. Ordi-narily, the grant of an easement implies a reservation of the fee and where no privilege of user is given, it indicates that none was deemed necessary by the parties.

We do not think that the presumption arising from the three facts mentioned above is rebutted by the language of the deed and hence that the title passed to the center of the street. These views are confirmed by the subsequent history of the road, including the conveyance of the premises opposite those in question from Stilwell to Woolsey in July, 1799, where the course is to Stilwell's road and thence along said road according to the Guerck map. It is improbable that if the grantor had intended to reserve the northerly half of the road he would not have reserved the southerly half also. The record shows that there never has been any adverse claim or possession on the part of Stilwell, or his successors, or anyone else, in or to any part of said premises and that since 1846 the lane has not been used or claimed by anyone as a road. For upwards of ninety years, therefore, there has been an entire abandonment by Stilwell and his representatives of any claim to the roadbed, although during that time awards under the power of eminent domain have been made to persons claiming title to the road through the deed in question and others.

This case illustrates the importance of the presumption upon which our decision rests. In an early day when land was cheap Stilwell conveyed part of a farm that is now in a crowded city and of great value. To hold that he intended to reserve the fee of a street with reference to which, as laid down on a map, he conveyed the property adjoining, would be in conflict not only with his probable intention, but with public policy as well. His probable intention may be inferred, when a broad view is taken of the subject, from the utter neglect of himself and his heirs for nearly a century to claim any interest in the

street. The public interest may be appreciated when it is known that all improvements must be postponed and the general welfare thus retarded unless the presumption is extended to a state of facts fairly coming within the reason upon which it is founded.

The order appealed from should be reversed, with costs, and the purchaser directed to complete his contract.

All concur.

Order reversed.