## PROVIDENCE.

CAROLINE M. ANTHONY *et al. vs.* CITY OF PROVIDENCE.

A power of attorney to sell any or all of the real estate of the principal, without restriction as to the mode of sale, may impliedly confer authority upon the attorney to plat the land and lay out lots and ways, the platting of land being a very common step towards its sale, and the laying out of ways, if the sale is to be in parcels, being often necessary, and incidental to the exercise of such full authority.

T. claimed title to land which had been platted into lots and streets under a deed from A., in which the land was described as one hundred and thirteen lots in the town of Cranston, giving their numbers without reference to a plat. The heirs of A. claimed title to the same land. In proceeding to assess the value of the land which had been condemned by the city of Providence, and the title to which, as between T. and A.'s heirs, was in issue, the plat was fully identified in evidence, and it appeared that the land was sold by the plat—that the lots were checked thereon as they were compared with the deed,—that the

plat was delivered with the deed, and that the grantee was put in possession of the land. The jury awarded T. the value of the lots, and found that the value of the streets was nothing. T. and the A. heirs then agreed that T. was the owner of the lots, and the A. heirs withdrew all claims against the city, and T. withdrew all claims against the city for the platted streets:

*Held*, that the agreement between T. and the A. heirs was in effect a waiver of all exceptions to extrinsic proof.

*Held*, further, that the agreement and the consequent judgment for T. settled T.'s title as to the lots.

*Held*, further, that the legal effect of the deed conveying the lots to T. was to give him also title to the platted streets on which the lots in fact were bounded.

Plaintiffs' petition for a new trial.

*March* 27, 1894.  Stiness, J.  Under the provisions of Pub. Laws R. I. cap. 1018, the City of Providence condemned a tract of land adjoining Roger Williams Park, which was formerly owned by John Anthony, ancestor of these plaintiffs, and which had been platted and sold to George L. Tucker.  At the trial before the jury to assess the value of the land several questions arose as to Tucker's ownership and right to compensation, which are now withdrawn. It is agreed that he was the owner of the lots so taken, and the Anthony heirs withdraw all claim therefor against the city; and said Tucker withdraws all claim against the city for the land laid out for the streets.  The jury having awarded Tucker the value of the lots and found that the value of the land in the streets was nothing, the Anthony heirs now petition for a new trial upon the ground that they were owners of the fee of the streets and entitled to be paid therefor by the city, and that the presiding justice erred in refusing to instruct the jury that the deed to Tucker, which described the land only by numbers on the plat, excluded the soil of the streets.

It appears that John Anthony left this State in 1851, and the next year he gave to Joseph G. Johnson a power of attorney to sell his real estate.  The John Anthony plat was made in 1854, and it is claimed that it must have been made by Johnson, who had no authority under the power of attorney to plat land; that such platting did not bind these heirs and that the title to the streets remains in them.  The lan-

guage of the power of attorney was very comprehensive. It gave full authority to sell any or all of the real estate of the principal. The attorney could sell in bulk or parcels, the mode of sale being unrestricted. The platting of land is a very common step towards its sale, and the laying out of ways, if the sale be in parcels, is often necessary. It may be incidental to the exercise of such full authority as was granted to Johnson. Such power is quite distinct from an attempt to dedicate the land of another to the public. In this case the sale was of all the lots and so of all the land. The deed given by Johnson as attorney described the land as one hundred and thirteen lots in the town of Cranston, giving their numbers without reference to the plat. The plat itself was fully identified in evidence, the land was sold by that plat; the lots were checked thereon as they were compared with the deed; the plat was delivered with the deed and the grantee was put into possession of the land by the attorney. Under these facts, the agreement, which in effect ratifies the acts of the attorney and waives all exceptions to extrinsic proof, and the consequent judgment for Tucker as to the lots, settle his title to them as lots on the plat.

The main question then is, whether the conveyance of the lots carried a title to the streets. The great importance of ownership in a highway to an abutting owner is so manifest that courts on grounds of public policy, have established the presumption that a deed which bounds land on a highway is intended to go to the middle of the way, unless the contrary appears. As Kent says: "The established inference of law is, that a conveyance of land bounded on a public highway carries with it the fee to the centre of the road, as part and parcel of the grant. The idea of an intention in the grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land, is never to be presumed." 3 Kent Comment. *433. Various reasons are given for the inference, as that "the way was taken out of the party that hath other lands adjoining;" *Healey* v. *Babbitt*, 14 R. I. 533; *Church* v. *Meeker*, 34 Conn. 421; and that the owner of the land, laid out in lots and

streets, gets his pay for the streets in the increased value of the lots ; *Paul* v. *Carver*, 26 Pa. St. 223 ; and so purchasers, one after another, pay for the streets in paying for the lots. Of course parties may agree that the land shall not be conveyed, and this limitation upon the rule reduces the construction of the deed in a given case to a question of intention, about which there has been a great diversity of opinion. For example, where the boundary, with reference to the highway, has been "by the side of," "by the margin of," "along the line of" and the like, there have been decisions both ways as to whether it gave title to the centre of the way.    Elliott on Roads and Streets, p. 550 and notes.    In this State a grant of land "lying westward of Back Street" and one of its lines running by the "westerly side of Back Street," was construed to exclude the street.    *Hughes* v. *Providence & Worcester R. R. Co.*, 2 R. I. 508.    In *Tingley* v. *Providence*, 8 R. I. 493, the questions were whether land, marked on a plat for a street, which was claimed as private property by adverse user, would pass under a deed of lots by numbers on the plat ; and whether the deed conveyed anything in the street discharged of the easement. The questions were answered in the negative, and rightly ; because if the land had ceased to be a street it had ceased to be within the presumption which would carry the line to the centre of the street.    It would need an express grant to convey land acquired by adverse possession just as it would to convey any other private property.    If the land had not ceased to be a street, then, clearly, the ruling that the deed did not convey it discharged of the easement was correct. Had Judge Brayton, in giving the opinion, said no more on this point, the case would have been very plain.    But he adds a *dictum* that it is not clear that anything could pass under the deed, beyond the line of the street.    He says that the line on the plat separates the lot from the street and cannot be construed to be in the middle of the street and that the line drawn actually excludes the street.    But why cannot the line of a platted lot be construed to be in the middle of a street as well as a line described in words ;  as

"on" "by" or "along" a street? Is the line drawn any stronger or more sacred than the line described? And yet Judge Brayton says immediately before this, as everybody else would say, that such a description would carry title to the middle of the street. We see no reason for distinction between a line drawn and a line described as "on the street." One does not exclude the street any more than the other. The same considerations of inference and policy which apply to lots described as bounding on a street apply equally to lots platted as bounding on the street. In both cases the title to the streets, subject to the easement, should be in the adjoining owners. The original owner has received his pay for the street; he is presumed to have parted with all his interest in the land and he can retain no beneficial ownership, save that of a possible abandonment of the way. On the other hand the title to the streets may be of great benefit to the lot owners, for projections, trees, coal vaults, or variations in the line of the way if it should become desirable. *Paul* v. *Carver*, 26 Pa. St. 223. To say that owners of the land, for such incidental benefits as these, must, unless the title has been expressly reserved, hunt up the persons who laid out the streets, or possibly their heirs, to get their consent, is unreasonable.

The trouble in this class of cases has been that courts have not held to the rule that the intention of a grantor to withhold his interest in a road is never to be presumed. It has been presumed from the use of words such as "along" and "by the side of," when there has been no express reservation and probably none intended. But the terms of boundary on a highway are seldom significant. As Judge Redfield says in the dissenting opinion in *Buck* v. *Squiers*, 22 Vt. 484: "In ninety-nine cases in every hundred the parties, at the time of the conveyance, do not esteem the land covered by the highway of any importance, either way; hence they use words naturally descriptive of the prominent idea in their minds at the time, and, in so doing, define the land, which it is expected the party will occupy and improve." The law should be uniform and that which is established in case of a

boundary "upon" or "by" should apply to all cases, except where there is a clear and express reservation. Such a rule is useful, reasonable and just. It rests upon no new doctrine, but it is the unavoidable logic of the premise which in any case extends a boundary into the highway. Its utility is evidenced by statutory enactment in the several States and its authority is abundantly sustained by the better reason and greater weight of decision. *Berridge* v. *Ward,* 10 C. B. N. S. 400. *Matter of Ladue,* 118 N. Y. 213 ; *Bissell* v. *N. Y. Central R. R. Co.,* 23 N. Y. 61 ; *Gould* v. *Eastern R. R. Co.,* 142 Mass. 85 ; *Woodman* v. *Spencer,* 54 N. H. 507 ; *Gear* v. *Barnum,* 37 Conn. 229 ; *Dobson* v. *Hohenadel,* 148 Pa. St. 367 ; *Andrews* v. *Youmans,* 78 Wis. 56 ; *Jarstadt* v. *Morgan,* 48 Wis. 245 ; *Dovaston* v. *Payne,* 2 Smith's Lead. Cas. *216. The presumption that the soil to the centre of a way belongs to the owner of the adjoining land applies equally to a private as to a public road. *Holmes* v. *Bellingham,* 7. C. B. N. S. 329, (97 Eng. Com. Law, 329.)

As to a grantee, if the way be shown upon a plat referred to in the deed, it is a street and it makes no difference whether it has been open or not. *Bissell* v. *N. Y. Central Railroad; Dobson* v. *Hohenadel, supra.* The legal effect of the deed which gave Tucker title to the lots on the John Anthony plat, gave him title to the streets on which the lots in fact were bounded.

There was, therefore, no error in the refusal of the presiding justice to instruct the jury as requested. This conclusion as to the effect of the deed disposes of all the grounds for a new trial which are now before us ; for since the petitioners have no title to the streets in question, their petition for a new trial must be denied.

After the foregoing opinion, the plaintiffs asked for a reargument and filed additional briefs.

*October* 17, 1894.  The court handed down a rescript announcing that it adhered to its former opinion.

*Irving Champlin & George B. Barrows,* for plaintiffs.

*Francis Colwell,* City Solicitor, & *Albert A. Baker,* Assistant City Solicitor, for defendant.