92   9
157a 713

ALMON T. WILCOX and MINNIE C. DEXTER, Appellants, *v.* EDWARD BREAD and EDWARD J. BREAD, Respondents.

*Real estate — conflict between courses and distances and quantity — title to the center of a lake.*

Where courses and distances coincide with the quantity of land stated in a deed, they will control monuments named in it; but where there exists no such harmony, quantity is seldom resorted to for the purpose of fixing a boundary, and is rarely, if ever, permitted to control a monument or courses and distances.

Where a conveyance of property lying adjacent to a non-navigable lake describes such property as running to the lake and extending "thence along the said lake" east to the north line of a certain lot, the grantee will take title to the center of the lake, although by such a construction he will receive more land than the number of acres mentioned in the deed.

APPEAL by the plaintiffs, Almon T. Wilcox and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Osw. go on the 22d day of October, 1894, upon a nonsuit granted after a trial at the Oswego Circuit, before the court and a jury, on the 18th day of October, 1894.

*O. M. Reilly,* for the appellants.

*Piper & Rice,* for the respondents.

PARKER, J. :

The plaintiffs seek to recover from the defendants for large quantities of ice taken by such defendants from Fish lake in the town of Granby, in Oswego county. They make this claim as owners of the land under that part of the lake from which the ice was taken, and they concede that if their title to that land fails they cannot maintain their action. They further concede that they have failed to establish such title in themselves, if the deed which George D. Wickham executed to Henry Bakeman, December 4, 1818, included within its description the land in question.

The lands so described lie upon the easterly side of Fish lake, and the question arises over the effect to be given to the language describing their western boundary, when read in connection with another statement in the same description as to the number of acres intended to be conveyed. The description is substantially as follows :

"All that tract, piece or parcel of land situate in the said town of Granby, formerly Lysander, and part of Lot No. 4 in the said town, on which the said Bakeman now lives. Beginning on the Oswego river at the southeast corner of the fifty acres sold for the defraying the expenses of the surveying the said lot ; from thence up said river," etc., etc., through various courses, and then proceeding as follows : "From thence north 83 degrees west forty chains and seventy-five links to Fish lake ; thence along the said lake to the north line of the said Lot No. 4. Thence along the same east, twenty-five chains," etc., through several courses, etc., "to the place of beginning, containing one hundred acres, being the number of acres hereby intended to be conveyed."

The defendants claim that by this description Bakeman took title to the center of the lake, or at least so far out into the lake as Lot No. 4 extended ; that the part of the lake from which they took the ice was upon that part of Lot No. 4 which extended under the waters of the lake, and that they had acquired through Bakeman's title the right to so take it.

The plaintiffs claim that by such description Bakeman took only to the edge of the lake, and that so much of Lot No. 4 as extended

westerly, and out under the waters of the lake, remained·in Wickham, and that through the will of Wickham they have acquired his title thereto.

The trial court held that by such conveyance Bakeman acquired title to the lands in question, and nonsuited the plaintiffs, and from the judgment entered thereon the plaintiffs have taken this appeal.

It seems to be settled in this State that a conveyance of land lying adjacent to such a lake as this, *i. e.*, not navigable, which describes it as running "to the lake, and thence along the same" to some other monument or point designated, carries the title to the center of the lake. (*Gouverneur* v. *National Ice Co.*, 134 N. Y. 355.) The decision in that case must control this case, unless other expressions in the description indicate a contrary or a different intent.

It appears as an undisputed fact in the case that there are about forty acres of Lot No. 4 extending westerly under the waters of the lake, and the plaintiffs contend that it was not intended that the west line should be located so far out into the lake that it would include 140 acres in the description, because it is expressly stated at the end of such description that the intent is to convey 100 acres. In other words, that the statement·of the number of acres intended to be conveyed clearly dispels the idea that the west line was to be located any further west than the edge of the lake. But it is just as explicitly stated that the lands conveyed are to extend up to the lake and along the lake, and the plaintiffs' counsel does not claim but that under the description the grantee acquired title clear up to the water's edge.

It is a conceded fact in the case that there were upwards of 103 acres included within such description, and the statement that 100 acres were intended was evidently not based upon any accurate survey made, and the adoption of the water's edge as the west line of the premises intended to be conveyed.

The statement that 100 acres were intended to be conveyed was evidently a mere·estimate as to the number of acres which the grantee was obtaining, and more than likely had reference alone to the acres of land and not to the amount of water. It seems that the grantee was living on the premises conveyed; it is plain that he was to have all the land up to the water's edge, clear across the east end of the lake, and it is quite improbable that the convey-

ance was intended to cut him off from the use of such water, and also cut off the grantor from any access to it at that end of the lake.

We do not think that the statement of the number of acres intended to be conveyed clearly manifests such an intent or is sufcient to change the meaning naturally given to such language as the parties have chosen in describing their western boundary. It is true that where courses and distances coincide with the quantity stated together, they will control monuments named in the deed. Such are the cases cited by plaintiffs' counsel (*Higinbotham* v. *Stoddard*, 72 N. Y. 94), but in this case no such harmony is shown, and it is a familiar rule that quantity is seldom resorted to for the purpose of fixing a boundary, and is rarely if ever permitted to control monuments or courses and distances. (2 Am. & Eng. Ency. of Law, 499, 508.)

The lake was evidently taken as the westerly boundary of the land conveyed. It is so expressly stated in the conveyance, and such statement must be given that significance, which, in the absence of a clearly expressed intent to the contrary, the rule in this State gives it.

The presumption is, that the intent was to pass the title to the center of the lake, and nothing in the terms of the grant or arising by necessary implication has overcome it. (*Mott* v. *Mott*, 68 N. Y. 246; *Matter of Ladue et al.*, 118 id. 219.)

Nor do we find in the case any conflict of evidence concerning any fact bearing upon the question of intent that made it a question for the jury.

We conclude that by the conveyance in question Bakeman acquired title to the lands upon which the alleged trespass by defendants was committed. The plaintiffs, therefore, had neither possession of nor title to such lands, and cannot maintain this action.

The nonsuit was right and the judgment entered should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.