(35 Misc. Rep. 634.)

## WISE v. CURRY.

(Supreme Court, Trial Term, New York County. August, 1901.)

DEED—CONSTRUCTION—PROPERTY CONVEYED.

A referee in partition in 1851 sold all the property of an intestate in a certain locality under a decree ordering the making of a map for the sale. The property was described in a deed of testator, made in 1826, as bounded on the north by a road or lane, and by the lot numbers on the map. The referee described the parcels sold by metes and bounds which coincided with the map, but in describing the northern boundary he made no mention of the lane. No claim was ever made subsequently to the lane by the intestate's heirs, nor did the referee make a mention thereof. The several owners whose lands the lane crossed closed it and built upon it. Fifty years after the partition, a purchaser refused to take title on the ground that part of the lot represented by the lane did not pass under the partition. *Held*, that a fee in the lane passed by the referee's deed, under the rule that a grant of abutting lands conveys a fee to the center of the street, and in view of the public record in the action of partition.

Action by Frank E. Wise against Sarah C. Curry. Judgment for defendant.

Ritch, Woodford, Bovee & Wallace (David F. Butcher, of counsel), for plaintiff.

Graff & Blauvelt (William T. Graff, of counsel), for defendant.

CLARKE, J. Action to recover moneys paid on account of contract for the purchase of certain real estate in the city of New York and expenses of examining title. Counterclaim demanding specific performance. Case submitted to the court without a jury upon an

agreed statement of facts.   By deed dated September 7, 1826, record-
ed September 14, 1826, Aaron B. Jackson and Cynthia, his wife, con-
veyed to Leonard Fisher the following described property:

"All those three certain lots, pieces, or parcels of ground situate, lying,
and being in the 9th ward of the city of New York, being part or parcel of
the late farm of said Richard Somerindike, deceased, and known and dis-
tinguished on a certain map or chart thereof, made by William Bridges, one
of the city surveyors, dated 1808, by lots numbers 1, 2, and 3, bounded east-
erly in front on the Bloomingdale road, 175 feet; southerly, by Richard Law-
rence, 450 feet 2 inches; westerly, also on the said Richard Lawrence, 163
feet 6 inches; and northerly, by the road or lane leading from the Blooming-
dale road to Richard Lawrence, 421 feet."

The said lane was known as Perrit's or Lawrence's lane, was 20
feet wide, and extended to the Bloomingdale road.   It is conceded,
and, indeed, under our authorities, it could not well be denied, that
under said deed and by said description title vested in Fisher to the
southerly half of said lane to the center line thereof.   Said property
was devised to Joseph Fisher, who died intestate in or about the
month of March, 1839.   In 1850 the heirs of Joseph Fisher parti-
tioned his property in an action entitled "Robert H. Cumming and
Others against Leonard Fisher and Others."   In the complaint the
lots at Bloomingdale were described as above set forth in the deed
from Jackson to Fisher, executed in 1826.   Such proceedings were
thereupon had that on November 24, 1851, an interlocutory decree of
partition and sale was made under the direction of Stephen Cam-
brelling, referee.   By the decree a map of the premises at Bloom-
ingdale was ordered to be made for the purpose of sale.   Said map
was made, and showed the property divided into 32 lots, of which 1
to 6 faced on Bloomingdale road; the uneven numbers, from 7 to
31, faced on Seventy-Fifth street, and were approximately 102.2 by
25, and immediately adjoining them to the north were the even-num-
bered lots, 8 to 32, each approximately 25 feet wide, and diminish-
ing from east to west from about 46.8½ to 23.2 in depth, and all
shown as abutting on said lane.   Joseph Fisher owned no other prop-
erty at Bloomingdale than that described in the complaint in said
partition suit.   The referee, by his report dated January 27, 1852,
reported the sale of lots Nos. 27, 28, 29, and 30 to Joseph Cudlipp
for $1,040, and of lots Nos. 21, 22, 23, 24, 25, and 26 to James Mun-
son for $1,590.   It also shows that he caused due notice of the sale
to be published and posted, and that on January 16th he caused said
several lots, pieces, or parcels to be put up and sold at public auc-
tion, and states to whom the several lots were sold by lot numbers.
By deed dated February 18, 1852, he conveyed to Joseph Cudlipp the
four lots sold to him, and describes them by metes and bounds which
exactly coincide with said survey and map, but without making men-
tion of said lane.   Said Cudlipp was also the owner of premises lying
north of the center line of said Perrit's or Lawrence's lane, and ac-
quired the same by deed of David Codwise, master in chancery, etc.,
dated November 15, 1839, recorded November 30, 1839, the descrip-
tion whereof bounding the lots by said lane concededly conveyed title
to the north half thereof.   The said Cambrelling, also, by deed dated
February 16, 1852, recorded February 17, 1852, for a consideration of

$1,590, conveyed to James Munson all those certain six lots sold to him, and the description in said deed likewise described the lots by metes and bounds as set forth in said map and survey, and likewise made no mention of said lane.  The said Cudlipp subsequently acquired the interest of said Munson in the property last above described so far as it affects the premises sought to be conveyed by the defendants.  Both of the above-described referee's deeds were in the usual form, reciting all the proceedings, the judgment, sale, report of sales, etc.   No separate sale of the land in the lane was made by the referee.   Lawrence's lane was closed in the year 1868 by the several owners across whose land it ran by the erection of fences inclosing their lots.   Almost the entire lane is now covered by expensive buildings, and its exit on the boulevard is covered by part of a five-story apartment house.   No claim is known to have been made since 1851 by any of the Fisher heirs to any portion of said lane.   It will appear from the above statement of facts that Cudlipp owned, by description in his deeds, the property on both sides of said lane and the north half thereof; but plaintiff claims the title offered is unmarketable, because for the south half thereof, a strip 10 feet wide and 25 feet long in this case, the conveyance was by metes and bounds, without reference to the lane, and therefore said strip did not pass by said referee's deed; and that is the sole question in this case.

It is well settled that a conveyance of land bounded on a highway carries with it the fee to the center of the road as part of the grant, and this is true of a lot bounded on a street and called a street, but which is not in fact a public street or highway.   In the early case of Bissell v. Railroad Co., 23 N. Y. 61, the court of appeals went further, and held that conveyances carried the fee to the middle of the street, although there was no express mention of any street in any of the deeds, the grantor describing the lots by their numbers, and in some cases giving size of lots, reference being had to an allotment and survey on which the street appeared.   In the Bissell Case, as here, the depth of the lot was stated in figures, which would not include any part of the street.   Referring to the Bissell Case, the court of appeals has recently said:

"This construction has so long prevailed that it has become a rule of property, and it is founded upon the presumed intent of the parties to the conveyance. It is not reasonable to infer that the grantor intended to reserve the title to the fee of the narrow strip lying between the physical boundaries of the lot conveyed and the center of the street, or that the grantee understood that any such reservation had been made." Hennessy v. Murdock, 137 N. Y. 317, 33 N. E. 330.

In a case like this, if necessary to learn the intention of the parties, we may refer to the description in the complaint, the judgment, the notice of sale, and to the map in the partition suit, which are public records.  "The question now arises, what is the extent of such a grant?  Does it go to the margin or to the center of the road as laid down on the map?  This depends upon the intention of the parties as gathered from the terms of the deed, the situation of the land, and, where there is doubt as to the intent, from the practical construction of the grantor and grantee and their successors in title [citing

cases]. The construction, in case of ambiguity, should be most favorable to the grantee." In re Ladue, 118 N. Y. 213, 23 N. E. 465. In the case at bar the judgment in the partition suit directed the referee to sell all the property described, which description covered the land in question. He reported he had so sold all the property. Both of the referee's deeds were in the usual form, reciting all the proceedings, the judgment, sale, report of sale, etc. The deeds described the property sold as certain lots with dimensions corresponding to the numbered lots on the map and to those reported sold. Taking into consideration the proceedings in the partition suit, which are public records, and not parol evidence, it appears that the lots conveyed were the lots bounded on the lane, and so the fee went to the middle of the lane. Upon the facts before the court there is no material defect in the title to the premises in question. The title is marketable under the rules laid down in Heller v. Cohen, 154 N. Y. 306, 48 N. E. 527.

Judgment for defendant, with costs.