■ JACK W. LOWE, Plaintiff, v. FERNANDO DI FILIPPO, Defendant.— In a controversy submitted on an agreed statement of facts pursuant to section 546 of the Civil Practice Act, the question presented is whether a tax sale of real property, which is assessed by lot numbers on a filed map showing subdivided lots and streets, carries with it title to the center of the street in front

of the lots. Prior to January 5, 1914, the Pennsylvania Improvement Company owned a tract of land in the Town of Southhampton, Suffolk County. On that date it filed a map in the office of the Clerk of Suffolk County entitled "Map of Estates of Quogue, Section 8". The property was subdivided into blocks, lots and streets. After such filing, the town assessors discontinued assessing the mapped land as one parcel and assessed the subdivided lots as lots on the filed map. The streets on the map were not separately assessed. On July 16, 1914, one Joseph Napoleon Roy, recorded a deed to him of 3 lots in block 6 from the Pennsylvania Company. It contained no reservation of title to land in the street. There is no record in the County Clerk's office of any deed to those lots from Roy. Nor is there any record of any deed to the other lots in blocks 5 and 6 from the Pennsylvania Company. For the tax year 1947–48, all the lots in blocks 5 and 6 were assessed. The taxes thereon were not paid; and in November, 1948, the lots were sold, as lots on the map, by the Suffolk County Treasurer to Suffolk County. On October 10, 1951, after time to redeem had expired, the Suffolk County Treasurer by deed (recorded on December 12, 1951) conveyed the lots, as lots on the map, to Suffolk County. On October 3, 1957, by a quitclaim deed (recorded October 4, 1957), Suffolk County conveyed the lots, as lots on the map, to plaintiff. On April 7, 1958, pursuant to subdivision 3 of section 335 of the Real Property Law, plaintiff filed a certificate of abandonment of the streets on the map other than Pennsylvania Avenue and Harriman Street. On August 28, 1959, plaintiff entered into a contract to sell the land to defendant. At the closing defendant was ready, able and willing to consummate the sale but he refused, claiming that the title was unmarketable because plaintiff had no title to the land in the streets in blocks 5 and 6. The controversy in question is whether the assessment and tax sale included the lots to the middle of the streets in front of the lots. In our opinion the answer is in the affirmative and the title is marketable. In Kent's Commentaries, 433, (14th ed., p. 670), the author states: " The idea of an intention in the grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land, is never to be presumed." The above rule has been applied in *Bissell* v. *New York Cent. R. R. Co.* (23 N. Y. 61); *Matter of Ladue* (118 N. Y. 213); *Fiebelkorn* v. *Rogacki* (280 App. Div. 20, affd. 305 N. Y. 725); *Gottfried* v. *State of New York* (23 Misc 2d 733). The subsequent filing of a certificate of abandonment of the streets on the map, pursuant to subdivision 3 of section 335 of the Real Property Law, was valid and effective and restored the lots and streets to their former status as " described land " in view of the fact that the streets never became a public highway by implied or actual acceptance, were never used and were never opened to the public. Accordingly, judgment upon the submission is rendered in favor of plaintiff, without costs. Settle judgment on consent or on ten days' notice. Beldock, Acting P. J., Ughetta, Kleinfeld, Christ and Pette, JJ., concur.